JAMES R. FLENS, PSY.D., ABPP
BOARD CERTIFIED IN CLINICAL AND FORENSIC PSYCHOLOGY
AMERICAN BOARD OF PROFESSIONAL PSYCHOLOGY

| | | |
|---|---|---|
| | *A PROFESSIONAL LIMITED LIABILITY CORPORATION* | |
| CLINICAL PSYCHOLOGY | 3433 LITHIA PINECREST ROAD, SUITE 346 | eFACSIMILE |
| FORENSIC PSYCHOLOGY | VALRICO, FLORIDA 33596 | (813) 579-5339 |
| | DRJAYFLENS@YAHOO.COM | |
| | (813) 684-7233 | |

## Consultation Report

### *Findings and Recommendations*

***Cautionary Note:*** *This report involves a review of records that were provided by Counsel for Mr. Moody. I have not evaluated any of the parties, nor have I evaluated their minor child, Eden. Therefore, no recommendations can be offered regarding physical and/or legal custody of the Moody's minor child.*

| | |
|---|---|
| **RE:** | **Angela Moody v Edward Moody** |
| **Case:** | 60 DR2011-1586; Family Division FD |
| **Jurisdiction:** | 14th Division; Circuit Court of Pulaski County, Arkansas |
| **Presiding Judge:** | Honorable Vann Smith |
| **Plaintiff:** | Angela Moody |
| **Defendant:** | Edward Moody |
| **Date of Report:** | September 3, 2014 |

## Executive Summary

I have reviewed numerous documents that have been generated by Angela Moody and Edward over the course of several years. There are several issues that I believe should be evaluated by a competent forensic psychologist. First, there are concerns about Angela's credibility, honesty and possibly characterological issues. Second, there are concerns about Angela's exposure of Eden to her paramour. Third, there are issues regarding Edward Moody's alcohol use. And most importantly, the intertwined issues of high conflict, co-parenting and Gatekeeping.

In discussing the importance of an evaluation for this family, I rely on the work of Austin and others in their descriptions of assessing Gatekeeping[1].

---

[1] *See e.g.,* Austin, W. G., Pruett, M. K., Kirkpatrick, H. D., Flens, J. R., & Gould, J. W. (2013). Parental gatekeeping and child custody/child access evaluations. Part I: Conceptual framework, research, and application. *Family Court Review*, *51*(3), 485-501; Ganong, L., Coleman, M., & McCaulley, G. (2012). Gatekeeping after separation and divorce. In K. Kuehnle & L. Drozd (Eds.), *Parenting plan evaluations. Applied research for the family courts* (pp. 369-398). New York: Oxford University Press.

**Consultation Report**
**RE:  Moody v Moody**

---

**Findings**

---

I was provided numerous records regarding the Moody v Moody case[2] and asked to determine if a child custody evaluation would possibly be helpful to the Court in determining the physical and/or legal custody of the Moody's minor child, Eden[3].  A review of the documents provided raised several issues that may need to be addressed by the Court regarding physical and/or legal custody issues.  For example, there are numerous documents related to Angela Moody's credibility and honesty.  This could also suggest concerns regarding Angela's characterological issues.  For example:

- **Complaint:  Beauregard, Inc. v Edward Mood and Angela Norwood Moody [February 24, 2006]**

  *12.    In the two-hour meeting that followed this confrontation, Angela Moody acknowledged the short payment and outstanding debt to Beauregard in the full amount of $41,273.00, and asked Beauregard to assist her in concealing this underpayment (and the payment necessary to cure it) from her husband, proposing several schemes to accomplish this deceit.  Refusing to participate in this deception, Beauregard again demanded immediate payment, which Angela Moody reluctantly agreed to make.*

- **Little Rock Police Department Incident Report [No. 2012-110588; October 5, 2012]**

  *Ed Moody filed a complaint with law enforcement alleging that Angela had stolen his cell phone.  According to the Incident Report, Angela returned the cell phone later that day.*

- **Notes Regarding the Cellular Phone**

  *Suggest that Angela Moody had installed software on Ed Moody's cellular phone and changed the account information, removing Ed Moody as the account holder.*

- **Affidavit for Warning Order:  Russell & LeMay Plumbing & Heating, Inc. v Angela Mood [July 25, 2013]**

  *The Plaintiff, Russell & LeMay Plumbing & Heating, Inc., by and through its attorney, Everett 0. Martindale, states that it has made diligent inquiry and attempts to obtain service upon Defendant, Angela Moody, and that it is their information and belief that Defendant, Angela Moody, did avoiding service in this matter and is making it impossible to obtain service.*

- **Letter from USAA [October 13, 2013]**

  *Notifying Edward Moody that he has been removed as an "interested party" in his Daughter's USAA account.*

---

[2]  An itemized listing of the records reviewed can be found in *Attachment A*.
[3]  Eden's date of birth is January 9, 2008; she is currently 6½ years old.

**Consultation Report**
**RE:  Moody v Moody**

This appears to be in direct conflict with the Temporary Order of November 18, 2011, paragraph 9, which states:

*9.  The parties have a USAA educational account (9036) for the college education of the parties' minor child.  As custodian of the account, the Plaintiff receives all statements and correspondence regarding the account.  Plaintiff shall provide a copy of the periodic statements to the Defendant each month.*

- **Court Order:  Moody v Moody [March 7, 2014]**

*50.  The Court makes the following findings regarding the credibility of the parties and material witnesses in this case.  The testimony of Lewis Ritchey, Mike Hodson and Linda Ring were credible; the testimony of Ed Moody was also credible but because of his inability to recall specific facts, the Court places less weight on his testimony.  The testimony of the Plaintiff, after observing her demeanor, was the least credible of the witnesses to testify.  Judging credibility is sometimes subjective after observing the manner in which a witness testifies on the stand, his or her reaction to evidence presented in the courtroom and whether his or her testimony makes sense.  The Court is concerned that the Plaintiff was not always truthful with the Court in all respects.*

- **Defendant's Response to Plaintiff's Motion for Contempt for Failure to Provide Funds for Litigation...and For Suit Money [March 7, 2014]**

*6.  In addition to blocking Defendant's ability to receive statements directly from USAA, Plaintiff has failed to personally provide Defendant with any statements regarding their minor child's account.*

*7.  Plaintiff's actions described above are in direct violation of the Temporary Order entered in this case, which states "Plaintiff shall provide a copy of the periodic statements to the Defendant each month."*

*8.  Plaintiff is in willful contempt of court for both making unauthorized withdrawals from the minor child's account and for concealing the account statements from Defendant, for which she should be sanctioned.*

*9.  Due to Plaintiff's history of financially deceptive behavior, Defendant respectfully requests this Court to order Plaintiff to reinstate Defendant as an interested party on the minor child's account and to allow USAA to send Defendant statements directly.*

Related to this is Angela's daily use of Adderall[4].  Adderall is typically prescribed to treat symptoms of *Attention Deficit Hyperactivity Disorder* [ADHD].  Adderall contains a combination of amphetamine and dextroamphetamine, both of which are central nervous system stimulants.  Prescriptions of this medication include a warning because of the high potential for abuse.  Side effects noted include mental impairment, becoming easily angered or annoyed, increased aggressive or hostile behavior, nervousness, depression, and severe mood swings (i.e., bipolar disorder)[5].

---

[4]  Deposition transcript of Angela Moody [October 17, 2013; p. 4/line 22].

**Consultation Report**
**RE:  Moody v Moody**


A review of authorizations for Angela Moody's Adderall use shows that Angela lost her prescription on at least one occasion and lost her medication bottle on at least one occasion.  The records also contained the following note from a treating physician:

> *Other psychiatric [diagnoses] have been ruled out.  [History] of being treated since early 20's.  Has poor concentration [and] loss of focus.  Has stress intolerance [and] inability to complete tasks.  Patient has had consult with [psychiatrist] [and] determined need for [medication]*

Symptoms of poor concentration, loss of focus, stress intolerance and inability to complete tasks could certainly impact Angela's parenting abilities.

---

Another issue is Angela Moody exposing the minor child to her paramour.  For example:

- **Defendant's Second Motion for Contempt:  Moody v Moody [July 24, 3013]**

  *1. That pursuant to the parties Temporary Order of November 18, 2011, paragraph (I), page 6, Order states "neither party shall have guests of the opposite sex of which they are romantically involved at anytime while the minor child is in his or her respective care and custody."*

  *2. The Plaintiff's paramour, Steve Harrelson, has been charged with third degree battery wherein he was accused of physical battery to another adult in the presence of one or more minor child, as verified by the police report attached here as Exhibit "A".*

  *3. Further, the Plaintiff's paramour was also investigated for breaking and entering into the home of a female companion, Monica Robertson, on or about May 15, 2013 by using his arm and fist to smash the double pane bedroom window in the middle of the night, see attached Exhibit "B"*

- **Defendant's Fourth Motion for Contempt:  Moody v Moody [August 2, 2013]**

  *1. On July 26, 2013, this Court issued an order awarding Defendant visitation with the minor child from August 2, 2013 until August 11, 2013.*

  *2. On July 31, 2013, Defendant, through counsel, informed the Court and Plaintiffs counsel that he would pick up the minor child at 8:00 a.m. on August 2, 2013 to begin his period of visitation. See Exhibit A, attached.*

  *3. On August 2, 2013, Defendant arrived at Plaintiffs residence at 8:00 a.m., and Plaintiff and the minor child were not at home.*

  *4. Plaintiff took the minor child out of state, without Defendant's permission, and their flight is not scheduled to return until approximately 5:30 p.m. on August 2, 2013.*

---

[5]  See e.g., *www.rxlist.com/adderall-side-effects-drug-center.htm*; *www.drugs.com/pro/adderall-xr.html*; *www.everydayhealth.com/drugs/Adderall*; *www.webmd.com/drugs/2/drug-63163/adderall-oral/details/list-sideeffects*

**Consultation Report**
**RE:  Moody v Moody**

Another issue is Edward Moody's alcohol use:

- **Temporary Order:  Moody v Moody [November 18, 2011]:**

  *2. The Plaintiff, Angela Moody, is hereby awarded temporary care and custody of the parties' minor child, Eden Moody, subject to visitation in favor of the Defendant, Edward Moody, as follows:*

  > *i. Defendant shall not consume any alcohol at least twelve (12) hours prior to any visitation with the minor child. Plaintiff may, at her discretion, perform a portable breathalyzer test upon the Defendant at either any drop off or pick up of the minor child. If Defendant either refuses to cooperate with the portable breathalyzer test, or should he have positive test results, Plaintiff may immediately terminate Defendant's visitation until a hearing may be held before the Court.*

  > *o. Plaintiff shall have the right to suspend visitation based upon alcohol use by Defendant in violation of the terms set forth herein.*

- **Supervision Agreement [December 27, 2012]**

  *I, Lawson Moody, and I, Reed Moody, hereby agree that one or both of us will supervise the visitation of our father and his daughter, Eden's visitation at all times during our Christmas trip to Breckenridge, Colorado, scheduled from December 28, 2012, to January 1, 2013. We will see that at all times one of us is always present with Eden and that one of us will drive the vehicle anytime Eden is present. The only time she may not be directly supervised is while she is in ski school*

  *We acknowledge the following requirements from the Temporary Order entered by the Court on November 18, 2011 and understand that these requirements fall within our responsibilities as supervisors:*

  *1)  Mr. Moody must transport Eden by commercial airline.*

  *2)  Mr. Moody is not allowed to drive Eden in a vehicle without an interlock device or appropriate toddler car seat; therefore, we will be responsible for driving her at all times while out of state.*

  *3)  Mrs. Moody is entitled to speak to Eden at least once per day while Eden is away on the trip.*

  *4)  Mr. Moody is not allowed to smoke, consume alcohol or illegal drugs, or abuse prescription medication while Eden is in his care.*

  *5)  Mr. Moody is ordered not to consume any alcohol at least 12 hours prior to any visitation with Eden; therefore, Mr. Moody shall not consume any alcohol during the Colorado trip with Eden.*

  *6)  Mr. Moody is not allowed to make disparaging remarks about Mrs. Moody, nor allow a third party to do so, while Eden is present.*

**Consultation Report**
**RE:  Moody v Moody**

7)  *Mr. Moody is not allowed to have guests of the opposite sex, unless related by blood or marriage, with whom he is romantically involved at any time while Eden is in his care.*

8)  *Mr. Moody is ordered to notify Mrs. Moody if Eden becomes injured or ill or requires medical attention.*

9)  *Mrs. Moody has the right to suspend visitation based upon alcohol use by Mr. Moody in violation of the terms set out in the Temporary Order.*

10) *Eden will not be left unattended in a vehicle, public restroom or otherwise at any time.*

- **Motion for Psychological Testing and Motion to Appoint Attorney Ad Litem:  Moody v Moody [January 3, 2013]**

*Comes the Defendant, Edward Moody, by and through his attorneys, Dodds, Kidd & Ryan, and for his Motion for Psychological Testing and Motion to Appoint Attorney Ad Litem, states and alleges:*

*1. That the Defendant has filed a counterclaim for divorce requesting joint custody of the parties' minor child.*

*2. That the Plaintiff over the past several months has exhibited behavior warranting psychological evaluation and counseling.*

*4. That each of the parties have requested custody of minor child and each have made allegations toward the other of behavior that is detrimental to the child.*

- **Plaintiff's Response to Motion for Psychological Testing and Motion to Appoint Attorney Ad Litem:  Moody v Moody [January 16, 2013]**

*2. Plaintiff denies paragraph two. Plaintiff states affirmatively that Defendant is the party who has exhibited behavior warranting psychological evaluation and counseling. Defendant filed a Motion to Expand Visitation in February of 2012, which the Court denied in October of 2012, in part due to Defendant's behavior since the temporary hearing in October of 2011. The Court denied the following requests for expanded visitation, having considered the testimony and evidence of Defendant's continued abuse of alcohol:*

*(a) The Court denied Defendant's request for expanded weekend visitation from Friday after school until Monday morning.*

*(b) The Court denied Defendant's request for expanded weeknight visitation, including a minimum of one night overnight in the "off week."*

*(c) The Court denied Defendant's request for alternating holidays.*

*(d) The Court denied Defendant's request for alternating weeks each summer.*

**Consultation Report**
**RE:  Moody v Moody**

> *(e) The Court denied Defendant's request to remove the interlock device from Defendant's vehicle.*

> *3. Plaintiff denies that the Court should grant the relief requested by Defendant in paragraph three. As known to Defendant, Plaintiff has been in individual counseling since prior to the filing of this matter for issues related to the marriage; Defendant's behaviors; and Defendant's abuse of alcohol. To date, Defendant has blocked the release of Defendant's counseling records at ArLAP (Arkansas Lawyers Assistance Program), and Defendant has stated that he is no longer engaged in individual counseling or any other recovery/treatment program since 2011. Defendant is the party who should submit to a full psychological evaluation, not Plaintiff, and the Court should choose the examiner, not Defendant. Further, all of Defendant's counseling records at ArLAP should be released as part of the full psychological evaluation.*

- **Emergency Motion for Production of Alcoholism Treatment Records:  Moody v Moody [July 23, 2013]**

> *1. Throughout the history of this proceeding, the Court has placed severe restrictions upon Defendant's visitation with the parties' minor child, Eden, as a result of his ongoing issues with alcoholism.*

- **Response to Emergency Motion for Production of Alcoholism Treatment Records: Moody v Moody [July 24, 2013]**

> *1. Defendant admits the allegations contained in paragraph one of Plaintiffs motion, except for the allegation that Defendant has "ongoing issues with alcoholism," which Defendant specifically denies.*

---

In my opinion, the most significant issue involves Gatekeeping[6,7] by Angela Moody.  More specifically, Angela's behavior raises significant concerns regarding restrictive gatekeeping[8] behavior.  I reviewed over four hundred pages of text messages[9] between Angela and Edward.  These text show a pattern of communication between Angela and Edward that indicates a high conflict co-parenting relationship.  There are dozens of examples of Edward sending multiple texts to Angela in his attempts to set up telephone contact with Eden.  These texts either go unanswered or are responded to by Angela with comments about Edward's personality, the legal

---

[6] *See e.g.,* Austin, W. G., Pruett, M. K., Kirkpatrick, H. D., Flens, J. R., & Gould, J. W.  (2013).  Parental gatekeeping and child custody/child access evaluations.  Part I:  Conceptual framework, research, and application. *Family Court Review*, *51*(3), 485-501; Ganong, L., Coleman, M., & McCaulley, G.  (2012). Gatekeeping after separation and divorce.  In K. Kuehnle & L. Drozd (Eds.), *Parenting plan evaluations. Applied research for the family courts* (pp. 369-398).  New York:  Oxford University Press.

[7] *"Parental gatekeeping encompasses attitudes and behaviors by either parent that affect the quality of the other parent-child relationship and/or level of involvement with the child."* (Austin et al., 2013; p. 486).

[8] *"On the other end of the continuum, restrictive gatekeeping is defined as a set of attitudes and behaviors that inhibit the other parent's involvement with the child and the quality of the parent-child relationship."* (Austin et al., 2013; p. 489).

[9] There are some redundancies over the course of the 416 pages of text messages reviewed.

**Consultation Report**
**RE: Moody v Moody**

issues between them or other comments that are completely irrelevant to parenting/co-parenting of Eden. Angela comments numerous times that Edward is only allowed to text her with issues regarding Eden. She then uses her text responses to provide rants and diatribes regarding Edward. Angela has been using babysitters, rather than allowing the child to be with her Father. The high-conflict nature of Angela and Edward's parenting relationship also appears to border on grossly inappropriate behavior in front of Eden. For example:

- **Defendant's Second Motion for Contempt [July 24, 2013]**

  *6. The Plaintiff continues to leave the minor child with a babysitter for several hours at a time and it would be in the child's best interest if the Defendant was were given first right of refusal to keep the child, as opposed to a stranger. It has also come to the Defendant's attention that the Plaintiff has allowed the minor child to stay overnight with a babysitter and the babysitter's male companion without the knowledge and consent of the Defendant.*

- **Report of Incident [May 23, 2014]**

  Edward Moody described an incident that took place in front of the minor child:

  *Last weekend, I had Eden Friday, Saturday and Sunday night and took her to school on Monday morning.*

  *Tuesday, Eden had a cough, so I met her and Angela at the doctor's office at 1:30. I kept Eden that afternoon after a visit with Eden's psychologist. And, I had Eden overnight on Tuesday.*

  *Wednesday morning, I took Eden home. Angela met us at the door and, in front of Eden, "chewed" me out for not having washed Eden's hair. I explained that Eden was sick all night, I was giving her treatments with an inhaler, and chose not to bathe her. Angela exclaimed that the doctor said Eden needed to wash her hair every day or it would make her sick. I told Angela I was leaving, told Eden goodbye, and went to my car. Angela followed me to the car calling me a drunk and said that the only thing I cared about was "my wallet." She pushed me against my car with her body.*

  *Eden saw all of this and heard Angela call me a drunk. Confrontations like this have been going on during the course of the divorce. I discussed it with Eden's psychologist, who instructed Eden to immediately go into the house and into her room when I dropped her off to prevent her from seeing and hearing Angela confront me. I have never initiated verbal abuse from Angela in front of Eden.*

---

**Conclusions and Recommendations**

---

I have reviewed numerous documents that have been generated by Angela Moody and Edward over the course of several years. There are several issues that I believe should be evaluated by a competent forensic psychologist. First, there are concerns about Angela's credibility, honesty and possibly characterological issues. Second, there are concerns about Angela's exposure of

**Consultation Report**
**RE:  Moody v Moody**

Eden to her paramour.  Third, there are issues regarding Edward Moody's alcohol use.  And most importantly, the intertwined issues of high conflict co-parenting and Gatekeeping.

In describing the importance of an evaluation for this family, I rely on the work of Austin and others in their descriptions of assessing Gatekeeping[10]:

> *First, nonresidential parents, usually the fathers, matter to children and their optimal development. Research has demonstrated that children benefit from positive father involvement (Amato & Sobolewski, 2004; Flouri, 2005; King & Sobolewski, 2006), and children of divorce fare best when children have a quality relationship with both parents under conditions of low exposure to parental conflict (Amato & Sobolewski, 2001).*

> *Second, fathers' involvement, especially postseparation, is affected by mothers' attitudes and behaviors towards him. Mothers' attitudes about fathers' involvement and coparenting, and her behaviors in supporting fathers' involvement, are significantly correlated with father involvement in terms of both limiting involvement and promoting it (Allen & Hawkins, 1999; DeLuccie, 1995; Fagan & Barnett, 2003; Futris & Schoppe-Sullivan, 2007; Hamer, 1998; Seery & Crowley, 2000; Schoppe-Sullivan, Brown, Cannon, & Mangelsdorf, 2008).*

> *A third reason gatekeeping is important for custody evaluators to assess emanates from research that establishes a correlation between the quality of the coparenting relationship and children's adjustment following divorce (King & Sobolewski, 2006; Amato & Sobolewski, 2004; Whiteside & Becker, 2000; Camera & Resnick, 1989). When children are caught in the middle of parental conflict, especially if the conflict is about the child, harm can occur (Sandler et al., 2008; Buchanan, Maccoby & Dornbusch, 1996; Tschann, Johnston, Kline & Wallerstein, 1989).*

If you have any questions regarding the opinions I have offered, please do not hesitate to contact me.

Respectfully submitted,

*J Flens, PsyD*

James R. Flens, Psy.D., ABPP
*Board Certified in Clinical Psychology*
*Board Certified in Forensic Psychology*
*American Board of Professional Psychology*

JRF/em

---

[10]  Austin et al. (2013; pp. 490-491)

**Consultation Report**
**RE:  Moody v Moody**

---

**Attachment A**

**Records Reviewed**

---

**Court and Legal Records**

1.      [February 24, 2006]  Complaint in Beauregard, Inc. v Edward Mood and Angela Norwood Moody

2.      [November 18, 2011]  Temporary Order

3.      [October 5, 2012]  Little Rock Police Department Incident Report [No. 2012-110588]

4.      [September 5, 2012] Transcript of Hearing

5.      [September 28, 2012] Transcript of Hearing

6.      [December 27, 2012]  Supervision Agreement

7.      [January 3, 2013]  Motion for Psychological Testing and Motion to Appoint Attorney Ad Litem

8.      [January 16, 2013]  Plaintiff's Response to Motion for Psychological Testing and Motion to Appoint Attorney Ad Litem

9.      [January 21, 2013]  Motion for Spring Break Visitation

10.    [January 25, 2013]  Defendant's Motion for Contempt

11.    [January 30, 2013]  Plaintiff Response to Defendant's Motion for Spring Break Visitation

12.    [February 25, 2013]  Plaintiff's Response to Defendant's Motion for Contempt

13.    [March 5, 2013]  Motion for Interim Attorneys Fees and Expert Fees

14.    [March 15, 2013]  Defendant's Response to Plaintiff's Motion for Interim Attorney's Fees and Expert Fees

15.    [March 19, 2013]  Plaintiff's Reply to Defendant's Response to Motion for Interim Attorney's Fees and Expect Fees

16.    [April 3, 2013]  Plaintiff's Motion for Contempt and Sanctions and Motion for Other Relief

17.    [Aril 17, 2013]  Answer to Motion for Contempt and Sanctions and motion for Other-Relief and Counter-Motion

**Consultation Report**
**RE:  Moody v Moody**

18.	[March 5, 2013]  Motion for Interim Attorney's Fees and Expert Fees

19.	[March 15, 2013]  Defendant's Response to Plaintiff's Motion for Interim Attorney's Fees and Expert Fees

20.	[March 18, 2013]  Text Message between Angela Moody and Edward Moody

21.	[March 19, 2013]  Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Interim Attorney's Fees and Expert Fees

22.	[April 3, 2013]  Plaintiff's Motion for Contempt and Sanctions and Motions for Other Relief

23.	[Aril 17, 2013]  Answer to Motion for Contempt and Sanctions and Motions for Other Relief and Counter-Motion

24.	[April 24, 2013]  Plaintiff's Reply to Defendant's Answer to Motion for Contempt and Sanctions

25.	[May 1, 2013]  Plaintiff's Motion for More Definitive Statement Pursuant to ARK. R. CIV. P. 12(e) and Response to Defendant's Counter-Motion

26.	[May 3, 2013]  Response to Plaintiff's Motion for More Definitive Statement Pursuant

27.	[May 6, 2013]  Plaintiff's Response to Motion to Quash Subpoenas Served on Private Snoop Investigations and AT&T Wireless

28.	[June 11, 2013]  Visitation Order

29.	[June 11, 2013]  Order RE:  Plaintiff's Motion for Relief and Motion for Contempt

30.	[June 11, 2013]  Visitation Order

31.	[June 27, 2013]  Motion for Extended Summer Visitation

32.	[July 10, 2013]  Plaintiff's Response Motion for Extended Summer Visitation

33.	[July 11, 2013]  Plaintiff's Amended and Substituted Response to Motion for Extended Summer Visitation

34.	[July 16, 013]  Amended Motion for Extended Summer Visitation

35.	[July 23, 2013]  Emergency Motion for Production of Alcoholism Treatment Records

36.	[July 24, 2013]  Response to Emergency Motion for Production of Alcoholism Treatment Records

37.	[July 24, 3013]  Defendant's Second Motion for Contempt

38.	[August 7, 2013]  Plaintiff's Response to Defendant's Second Motion for Contempt

**Consultation Report**
**RE:  Moody v Moody**

39.     [July 26, 2013]  Order

40.     [July 29, 2013]  Plaintiff's Expedited Motion Regarding Her Summer Visitation Period
        with Minor Child

41.     [July 29, 2013]  Plaintiff's Response to Amended Motion for Extended Summer
        Visitation

42.     [August 2, 2013]  Defendant's Fourth Motion for Contempt

43.     [August 7 2013]  Motion to Require Defendant to Return Child to Plaintiff at Conclusion
        of Supervised out of State Vacation, and for Alcohol Assessment prior to Further
        Modification of Existing Visitation Orders

44.     [August 9, 2013]  Answer to Motion to Require Defendant to Return Child to Plaintiff at
        Conclusion of Supervised out of State Vacation, and for Alcohol Assessment prior to
        Further Modification of Existing Visitation Orders

45.     [August 13, 2013]  Defendant's Fifth Motion for Contempt and Motion to Seal Certain
        Pleadings.

46.     [June 7, 2011]  Protective Order

47.     [March 19, 2013]  Plaintiff's Reply to Defendant's Response to Motion for Interim
        Attorney's Fees and Expert Fees

48.     [August 7, 2013]  Plaintiff's response to Defendant's Second Motion for Contempt

49.     [August 19, 2013]  Plaintiff's response to Defendant's Fourth Motion for Contempt

50.     [August 21, 2013]  Motion to Separate AT&T Cellular Telephone Accounts

51.     [August 29, 2013]  Plaintiff's Response to Defendant's Fifth Motion for Contempt and
        Motion to Seal Certain Pleadings

52.     [August 29, 2013]  Order Granting Interim Attorney's Fees and Costs

53.     [September 5, 2013]  Plaintiff's Response to Motion to Separate AT&T Cellular
        Telephone Accounts

54.     [September 25, 2013]  Plaintiff's Motion for Contempt and Motion for Sanctions

55.     [October 1, 2013]  Defendant's Response to Plaintiff's Motion for Expedited
        Enforcement of Court's Orders Regarding Discovery

56.     [October 1, 2013]  Defendant's Response to Plaintiff's motion for Contempt and Motion
        for Sanctions and Defendant's Counter-Motion for Contempt and Sanctions

57.     [June 11, 2013]  Order RE:  Plaintiff's Motion for Relief and Motion for Contempt

**Consultation Report**
**RE:  Moody v Moody**

58.     [July 1, 2013]  Answer – Russell & LeMay Plumbing & Heating, Inc. v Angela Mood and Edward Moody

59.     [July 25, 2013]  Complaint – Russell & LeMay Plumbing & Heating, Inc. v Angela Mood and Edward Moody

60.     [July 25, 2013]  Affidavit for Warning Order – Russell & LeMay Plumbing & Heating, Inc. v Angela Mood

61.     [July 29, 2013]  Warning Order Issued by Clerk – Russell & LeMay Plumbing & Heating, Inc. v Angela Mood

62.     [August 15, 2013]  Defendant Edward Moody's Responses to Interrogatories and Request for Production of Documents to Defendants – Russell & LeMay Plumbing & Heating, Inc. v Angela Mood

63.     [October 17, 2013] Transcript of Angela Moody Deposition

64.     [October 18, 2013] Transcript of Edward Moody Deposition

65.     [October 28, 2013]  Motion to Quash

66.     [October 28, 2013]  Motion to Exclude Last Minute Untimely Disclosed Witnesses

67.     [October 29, 2013]  Defendant's Response to Plaintiff's Motion to Quash

68.     [October 29, 2013]  Defendant's Response to Plaintiff's Motion to Exclude Witnesses

69.     [October 31, 2013]  Plaintiff's Reply Defendant's Response to Plaintiff's Motion to Quash

70.     [November 4, 2013]  Plaintiff's Brief Regarding Prenuptial Agreement Issues for November 7, 2013 Trial

71.     [November 5, 2013]  Plaintiff's Motion in Limine

72.     [November 5, 2013]  Trial Brief

73.     [November 6, 2013]  Defendant's Response to Plaintiff's Motion in Limine and Defendant's Motion in Limine

74.     [November 6, 2013]  Order on Defendant's Motion to Separate AT&T Cellular Telephone Accounts, Defendant's Fifth Motion for Contempt and Motion to Seal Certain Pleadings, and Plaintiff's Motion for Expedited Enforcement of Court's Orders Regarding Discovery

75.     [November 7, 2013] Transcript of Hearing on Prenuptial Agreement

76.     [November 8, 2013] Transcript of Hearing on Prenuptial Agreement

77.     [November 19, 2013]  Motion for Specific Visitation

**Consultation Report**
**RE:  Moody v Moody**

78.     [November 20, 2013]  Plaintiff's Response to Motion for Specific Visitation

79.     [December 13, 2013]  Plaintiff's Motion for Contempt and to Amend Visitation

80.     [December 20, 2013]  Defendant's Response to Plaintiff's Motion for Contempt and to Amend Visitation and Defendant's Motion to Amend Visitation Schedule

81.     [January 3, 2014]  Defendant's Sixth Motion for Contempt

82.     [January 10, 2013]  Plaintiff's Response to Defendant's to Amend Visitation Schedule

83.     [January 22, 2014]  Plaintiff's Response to Defendant's Sixth Motion for Contempt

84.     [February 10, 2014]  Plaintiff's Amended Response to Defendant's Motion for Spring Break Visitation

85.     [February 11, 2014]  Amended and Substituted Motion for Spring Break and Easter Visitation

86.     [February 18, 2014]  Plaintiff's Response to Substituted Motion for Spring Break and Easter Visitation

87.     [February 21, 2014]  Plaintiff's Motion for Contempt for Failure to Provide Funds for Litigation Expenses as Required by Temporary Order and for Suit Money

88.     [March 7, 2014]  Defendant's Response to Plaintiff's Motion for Contempt for Failure to Provide Funds for Litigation...and For Suit Money

89.     [March 7, 2014]  Court Order

90.     [March 13, 2014] Transcript of Hearing

91.     [March 20, 2014]  Defendant's Motion to Set Aside and Reconsider Findings of Fact and Conclusions of Law Regarding Prenuptial Agreement

92.     [April 7, 2014]  Plaintiff's Response to Defendant's Motion to Set Aside and Reconsider Findings of Fact and Conclusions of Law Regarding Prenuptial Agreement

93.     [April 11, 2014]  Motion for Electronic Discovery

94.     [April 14, 2014]  Reply to Plaintiff's Response to Defendant's Motion to Set Aside and Reconsider Findings of Fact and Conclusions of Law Regarding Prenuptial Agreement

---

**Additional Records**

95.     Angela Moody's authorizations for Adderall prescriptions

96.     Report of Incident [May 23, 2014]

**Consultation Report**
**RE:  Moody v Moody**

97.     Notes Regarding the Cellular Phone [undated]

98.     Letter from USAA [October 13, 2013]

99.     USAA records on Eden Olivia Moody's educational account [January 31, 2014]

100.    Text Messages [March 24, 2013 to April 2, 2013]

101.    Text Messages [March 24, 2013 to July 11, 2013]

102.    Text Messages [April 2, 2013 to April 27, 2013]

103.    Text Messages [April 27, 2013 to June 17, 2013]

104.    Text Messages [June 18, 2013 to July 11, 2013]

105.    Text Messages [January 1, 2014 to April 13, 2014]

106.    Text Messages [February 10, 2014 to April 3, 2014]

107.    Text Messages [February 16, 2014 to March 25, 2014]

108.    Text Messages [April 5, 2014 to April 18, 2014]

109.    Text Messages [April 18, 2014 to April 23, 2014]