1                IN THE UNITED STATES DISTRICT COURT

2                  EASTERN DISTRICT OF ARKANSAS

3                        CENTRAL DIVISION

4

5

6      ANGELA MOODY                              PLAINTIFF

7

8

       v.

9

10                 CASE NO. 4:22-cv-330-JM

11

12

13     JAMES R. FLENS, PH.D.                     DEFENDANT

14

15

16

17                      DEPOSITION OF:

18

19

20                       ANGELA MOODY

21

22

23

24

25          (Taken March 2nd, 2023, at 1:55 p.m.)

                                              Page 1

1                      A P P E A R A N C E S
2
3

          ON  BEHALF  OF  THE  DEFENDANT:
4
5
6         JOSEPH  C.  STEPINA,  ESQUIRE
          Hall  Booth  Smith,  P.C.
7         200  River  Market  Avenue,  Suite  500
          Little  Rock,  Arkansas  72201
8         Phone:  (501)  435-3190
9
10
11

          ON  BEHALF  OF  THE  PLAINTIFF:
12
13

          RICKEY  HICKS,  ESQUIRE
14        Hicks  Law  Office
          1323  Broadway
15        Little  Rock,  Arkansas  72202
          Phone:  (501)  920-7298
16
17
18
19
20
21
22
23
24
25

                                              Page  2

```
1                           INDEX

2    WITNESS                                    PAGE

3    ANGELA MOODY

4    Examination by Mr. Stepina                   5

5    Certificate of Reporter                     62

6                         EXHIBITS

7    Exhibit 1 - Consultation Report             18

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Bushman Reporting                    800-556-8974
A Veritext Company                www.veritext.com

```
1                   C A P T I O N
2              ANSWERS AND ORAL DEPOSITION OF ANGELA
3    MOODY, a witness produced at the request of the
4    defendant, taken in the above-styled and numbered
5    cause on the 2nd day of March, 2023, before Mike
6    Mirelez, Registered Professional Reporter, Certified
7    Court Reporter, Certified Realtime Reporter, at
8    1:55 p.m., at 1323 Broadway, Little Rock, Arkansas,
9    pursuant to the agreement hereinafter set forth.
10
11             *   *   *   *   *   *   *   *   *
12              S T I P U L A T I O N S
13
14             IT IS STIPULATED AND AGREED by and between
15   the parties through their respective counsel that
16   the oral deposition of ANGELA MOODY may be taken for
17   any and all purposes according to the Federal Rules
18   of Civil Procedure.
19
20             *   *   *   *   *   *   *   *   *
21
22
23
24
25
                                          Page  4
```

1    WHEREUPON,

2                         ANGELA MOODY,

3    having been first duly sworn, was examined and

4    testified as follows:

5                         EXAMINATION

6    BY MR. STEPINA:

7    Q    We met just earlier, but, again, my name's

8    Joseph Stepina, I represent Dr. Flens in this

9    matter, along with Todd Wooten.  I'm sure your

10   attorney has gone over some of this with you, but I

11   want to go over it again with you.

12        It's really important that you give me verbal

13   answers to the questions.  Our court reporter is

14   making a record of everything that happens here, so

15   uh-huhs, uh-uhs can confuse the record, along with,

16   you know, nods, head shakes.  So verbal answers are

17   really important.

18        I also want you to remember, please only

19   answer a question I ask if you understand it.  I'm

20   known for asking complicated questions.  I'll be

21   happy to try and rephrase it.  I don't want you to

22   answer something that you're not sure of what I'm

23   asking you.

24        And, lastly, your attorney may object to some

25   of the questions I ask you.  Unless he instructs you

Bushman Reporting                    800-556-8974
A Veritext Company                  www.veritext.com

1    not to answer after he's made his objection on the

2    record, feel free to go ahead and answer that

3    question, like I said, unless he instructs you not

4    to answer the question for some sort of reason.

5            Will you please state your full name for the

6    record.

7    A       Angela Moody.

8    Q       How old are you, Ms. Moody?

9    A       Forty-nine.

10           MR. HICKS:  You know you can't ask a woman

11           that.

12           MR. STEPINA:  Yeah, I regretted it.

13   BY MR. STEPINA:

14   Q       Are you currently married?

15   A       No.

16   Q       Okay.  Do you have any kids other than the one

17   you share with Ed?

18   A       I do not.

19   Q       Okay.  Where do you currently live?

20   A       In Little Rock.

21   Q       Does anyone live at your address other than

22   your daughter?

23   A       No -- well, two cats, two dogs.

24   Q       I have some of my own.

25           What about any other relatives in the county,

Bushman Reporting                    800-556-8974
A Veritext Company                   www.veritext.com

1   do you have relatives that reside in Pulaski County?

2   A      No.

3   Q      Okay.  Are you a member of any organization,

4   civic organizations, Junior League, etc., around

5   town?

6   A      Yes.

7   Q      Okay.  What are some of those organizations

8   that you're involved in?

9   A      I'm a member of 20th Century Club.

10   Q      And what is that?

11   A      It is a women's organization that provides

12   funding for in-service to the Hope Lodge.  The

13   Hope Lodge is -- it's a -- it's a lodge for cancer

14   patients who travel to Little Rock to receive cancer

15   treatments from the area hospitals at no cost.

16   Q      Okay.

17   A      And we serve dinners to the patients.

18   Q      Are you involved in a church here?

19   A      Yes.

20   Q      Which one is that?

21   A      When -- my daughter and I go to Pulaski

22   Heights United Methodist Church.

23   Q      Is there any other organization that you might

24   be a member of or frequent where you might really

25   interact with people, have a close relationship with

Page 7

```
1    the other members?
2    A      I wouldn't say -- I wouldn't -- I mean,
3    there's some organizations that my daughter is a
4    member of, but.
5    Q      Don't worry about that.
6    A      Okay.
7    Q      Where do you work?  Or do you currently work?
8    A      No.
9    Q      When was the last time you have worked?
10   A      In 2004.
11   Q      Okay.
12   A      No, I take that back.  2005.
13   Q      Okay.  And where was that at?
14   A      The American Red Cross Blood Services.
15   Q      Was that here in Pulaski County?
16   A      Yes.  In Little Rock.
17   Q      And before that, where did you work?
18   A      That would have been Big Brothers Big Sisters.
19   Q      Is that also here in Pulaski County?
20   A      No.  That was in northwest Arkansas.
21   Q      What about your education, did you graduate
22   from college?
23   A      I have some college, but no.
24   Q      Some college.  Where did you attend?
25   A      The University of Arkansas.
```

Bushman Reporting
A Veritext Company

800-556-8974
www.veritext.com

```
1    Q     Are you from Arkansas?

2    A     Yes.

3    Q     Okay.

4    A     Well, I was born in California.

5    Q     Okay.  But you were raised most of your life

6    here?

7    A     Uh-huh.  Since I was four.

8    Q     In the northwest Arkansas area?

9    A     Yes.

10   Q     Okay.  Where about in northwest Arkansas?

11   A     Fayetteville.

12   Q     Fayetteville.  Did you graduate from

13   Fayetteville High School?

14   A     Yes.

15   Q     Okay.  I think I know the answer to this, but

16   have you ever served in the military?

17   A     No.

18   Q     Okay.  Have you ever been involved in any

19   prior litigation other than your divorce from Ed?

20   A     Not -- not that I recall.

21   Q     Okay.  Have you ever filed for bankruptcy?

22   A     No.

23   Q     Okay.  And do you have any criminal history

24   that you're aware of?

25   A     No.
```

Bushman Reporting                    800-556-8974
A Veritext Company                   www.veritext.com

1    Q     Okay.  Have you reviewed anything -- your

2    notes, documents, etc. -- prior to today to prepare?

3    I don't want to know about anything you've discussed

4    with your attorney, but have you reviewed anything

5    prior to your deposition today?

6    A     I mean, the complaint, the -- you know, just

7    the general documents that you have.

8    Q     Okay.  But nothing specific that you remember

9    other than the complaint?

10   A     No.

11   Q     Okay.  And so this all sort of revolves around

12   your divorce back in -- around 2011; is that

13   correct?

14   A     Somewhat.

15   Q     Can you tell me a little bit about your

16   marriage with Ed?  When did you-all get married?

17   A     In 2004.

18   Q     And so you instituted divorce proceedings in

19   2011?

20   A     Yes.

21   Q     Did you-all separate before that time?

22   A     No.

23   Q     Okay.  Can you briefly tell me what made you

24   decide to file for divorce from Ed?

25   A     He is an alcoholic.

1  Q     Do you remember about when you filed your

2  complaint for divorce?

3  A     April 1st, 2011.

4  Q     And do you remember when the divorce decree

5  was entered?

6  A     January 8th, 2015.

7  Q     That's a rather long period; would you agree?

8  A     Yes.

9  Q     What caused that four-year time period?

10  A     There were various issues.  It took a while to

11  get a temporary hearing date.  The judge recused, I

12  believe in 2012, but did not enter -- but wouldn't

13  step down until an order was entered, and it took

14  about eight months to get the hearing transcript

15  which was needed to draft the order.

16  Q     Uh-huh.

17  A     So that -- that added a long delay.  You know,

18  a lot of it was waiting on discovery, there were a

19  lot of discovery issues.  There were, I mean, just

20  various issues like that.

21  Q     Okay.  Would you --

22  A     And my husband didn't file a response to my

23  complaint, I think four months, so that -- that --

24  that ate up some time (gesturing).

25  Q     Would you describe the divorce as a

Bushman Reporting          800-556-8974
A Veritext Company          www.veritext.com

1  contentious proceeding?

2  A     Yes.

3  Q     Okay.  And what were the main issues involved?

4  A     There were a lot of issues.  We did have

5  safety for our daughter, his alcoholism.  We had --

6  there was a dispute over whether a prenuptial

7  agreement would -- would control the division of

8  assets.  Various issues like that.

9  Q     Okay.  Has the Court heard anything in the

10 divorce after it has entered the decree?

11 A     Multiple.

12 Q     So are there still issues ongoing?

13 A     Yes.

14 Q     Okay.  Do you remember when the last time

15 something was filed, did you-all have a hearing in

16 the matter?

17 A     The last hearing we had was November 30th,

18 and -- I'm sorry -- November 30th, 2022, and an

19 enter -- an order for that hearing was entered a

20 couple days ago.

21 Q     So has it been pretty steady that you-all have

22 had to file things in the Court even after the

23 divorce decree was entered?

24 A     Yes.

25 Q     Okay.  And what -- what are -- what have the

1   issues been postdivorce that have continued on that

2   have required you-all to keep coming back before the

3   Court?

4   A     Safety; our property settlement agreement that

5   ha -- that my ex-husband has not complied with our

6   property settlement agreement; visitation; he's

7   filed two motions to change custody; you know,

8   property; you know, our daughter has -- I've had to

9   file motions from the Court to get them to order to

10  allow academic testing.  Just various issues.

11  Q     Okay.  In the issues that have kept going on,

12  has it mainly been you filing things with the Court

13  or has your husband mainly been the one that has

14  filed the new issues with the Court?

15  A     He's filed issue -- he's filed motions because

16  he has not liked our decree.  We -- we agreed on --

17  we settled and we agreed on the terms of our decree,

18  and he has not -- I guess he decided he did not like

19  those terms, so he has filed multiple motions

20  related to those, but I've had to file multiple

21  motions as well.

22  Q     Okay.  And what specifically about the decree

23  has he taken issue with?

24  A     Well, our custody arrangement, our -- let's

25  see, child support, travel.  Let's see.  Our custody

Page 13

1   arrangement, I think I already said that.  I've had
2   to file motions regarding our property settlement
3   agreements.
4   Q    And what -- what is the custody arrangement
5   with you and your ex-husband?
6   A    I'm the prim -- I'm the primary custodial
7   parent --
8   Q    Okay.
9   A    -- and he has visitation.
10  Q    Okay.  I think I saw at one point, it might
11  have been two days a week.  Is that still about what
12  the visitation is?
13  A    He has standard weekends; but Thursday nights,
14  those begin on Thursday nights and end Monday
15  morning, and then he has Tuesday night every week.
16  Q    Okay.
17  A    And then we have holidays divided.
18  Q    Was Dr. Flens the only expert that your
19  husband hired during the divorce proceedings that
20  you're aware of?
21  A    Well, I don't view Dr. Flens as an expert in
22  our -- in our case, but he's the only person that
23  I'm aware of that he hired.
24  Q    And what about you, did you hire -- did you
25  retain an expert at any point during the

Bushman Reporting          800-556-8974
A Veritext Company         www.veritext.com

1    proceedings?

2    A    I did not.

3    Q    Okay.  But you have hired a private

4    investigator at one point?

5    A    Yes.

6    Q    Okay.  Is there any -- any other person

7    besides that private investigator you retained at a

8    point during your divorce proceedings?

9    A    A forensic accountant.

10   Q    And what did you hire the forensic accountant

11   for?

12   A    It's -- it's pretty customary in -- at least

13   in Pulaski County, for accountants to be hired, and

14   so my attorney advised me that I needed to hire a

15   forensic accountant to give her expert opinion on

16   the marital estate and our finances.

17   Q    And do you remember who you hired?

18   A    Yes.  Cheryl Shuffield.

19   Q    Do you know how to spell that?

20   A    Yes.  C-H-E-R-Y-L, S-H-U-F-F-I-E-L-D.

21   Q    And do you remember, did she practice with

22   like an organization or an agency?

23   A    A firm.

24   Q    A firm?

25   A    Uh-huh.  She was -- at one point during all of

```
 1    this, she became the -- I think -- I think her title
 2    was managing partner.  I think her title was CEO of
 3    Frost.
 4    Q     Okay.  Do you remember about when her
 5    involvement in the divorce was?
 6    A     It began in the summer of 2011, and she has
 7    remained -- I've continued to work with her even in
 8    postdecree.
 9    Q     Okay.  And tell me briefly, at what point in
10    the proceedings did Dr. Flens issue this report
11    (indicating)?
12    A     Sometime -- sometime between September and
13    October 2014.
14    Q     And so --
15    A     That I'm aware of.
16    Q     What was sort of happening in the divorce at
17    that time?  Were you-all preparing for a final
18    hearing?
19    A     Yes.
20    Q     Okay.  And I know you mentioned you had -- you
21    settled eventually.  Were there any issues that had
22    been resolved prior to the final -- at the time when
23    the report was issued, were there any issues that
24    you-all had settled before a final hearing
25    (gesturing)?
```

Page 16

1   A     Well, there were a lot of motions that were

2   never heard that hearings were never scheduled for,

3   so I guess you could consider that, possibly.

4   Q     I guess what I mean is were the -- was the

5   final hearing that was scheduled, was it narrowed to

6   just a few issues?  Had you, for say an example,

7   dealt with some property issues but hadn't dealt

8   with custody (gesturing)?

9   A     Oh.  I will say this: the prenuptial

10  agreement, that was bifurcated, that was the first

11  part of the -- of the trial and that was -- I think

12  the ruling may have come out in -- I would hate

13  to -- well, 2013 or 2014.  I'm guessing it was 2014.

14  Q     Okay.  And so after that, everything was

15  related to the division of the marital estate after

16  the (gesturing) --

17  A     Yes.

18  Q     Okay.

19  A     There may have been some issues that resolved,

20  I can't -- I can't think of -- I can't recall those

21  right now.

22  Q     And so you didn't -- you hadn't retained any

23  expert to testify at the final hearing that would

24  have happened?

25  A     Cheryl Shuffield.

Bushman Reporting                    800-556-8974
A Veritext Company                  www.veritext.com

1    Q     Okay.  But besides Ms. Shuffield.

2    A     I believe -- well, our daughter had a

3    therapist.  I think -- I think we may have sent a

4    subpoena to her therapist in case there was going to

5    be a trial.  I'm sure there were other individuals

6    that were hired, but that's -- that's who I call --

7    recall at the moment.

8    Q     Was your daughter represented by a guardian

9    ad litem in the proceedings?

10   A     No, she was not.

11   Q     Okay.  I'm going to ask you real quick, I have

12   printed off a couple copies of the report.  I would

13   like you to review it just briefly real quick.  And

14   I would like to enter this as Exhibit 1.

15         And we can go off the record for your review

16   and just let me know when you have had a chance to

17   review the report.

18   A     Okay.

19         MR. STEPINA:  And I'm going to mark this

20         as Exhibit 1.

21         Do you have any objection to me --

22         (Exhibit 1 was marked for identification.)

23         MR. HICKS:  No, no objection.

24         MR. STEPINA:  And we can go off the

25         record.

Bushman Reporting
A Veritext Company

800-556-8974
www.veritext.com

```
 1              (A brief recess is taken.)
 2    BY MR. STEPINA:
 3    Q     Would you agree that Dr. Flens reviewed
 4    records to prepare his report, at least that's what
 5    he has conveyed (gesturing)?
 6    A     I would agree that he has conveyed, yes,
 7    records and possibly -- I'm not sure what -- on some
 8    of these, that's what this document says.  I
 9    can't -- I can't confirm that.
10    Q     You can't confirm the contents of what he
11    purports the documents say, but you would agree that
12    he says that he looked at records; is that correct?
13    A     Yes.
14    Q     Okay.  And did the Court adopt any of
15    Dr. Flens' recommendations?
16    A     No.
17    Q     Okay.  So neither you nor Ed saw a forensic
18    psychologist?
19    A     No.
20    Q     At any point, do you know if this report was
21    entered into the Court record (indicating)?
22    A     To my knowledge, it's been attempted.  To my
23    knowledge, it has not.  But it -- actually --
24    actually, I'm aware that the judge -- I can't say
25    that for certain.
```

Bushman Reporting                    800-556-8974
A Veritext Company                  www.veritext.com

1   Q      That's okay.  At any point, did Dr. Flens

2   provide any testimony in the divorce?

3   A      In a -- in a deposition, yes.

4   Q      Okay.  So he was deposed?

5   A      Yes.

6   Q      Okay.  Do you remember about when he was

7   deposed?

8   A      In October of 2014.

9   Q      Were you present for his deposition?

10   A      I was.

11   Q      Okay.  And was it your attorney deposing

12   Dr. Flens?

13   A      I believe both did.  I think mine did and

14   possibly my ex-husband's, but I -- I know for

15   certain mine did.

16   Q      Do you remember if it was you or your

17   ex-husband who asked for him to be deposed?

18   A      I don't recall.

19   Q      Okay.  Do you recall what the main issues were

20   in Dr. Flens' deposition?

21   A      Could you --

22   Q      What did your attorney ask Dr. Flens about in

23   his deposition?

24   A      If he had ever -- you know, where he got his

25   information; I think he asked about his experience;

Bushman Reporting                    800-556-8974
A Veritext Company                   www.veritext.com

1    if he knew -- if he knew what information -- if any

2    of the information was correct; if he verified any

3    information that he was provided; if he had asked

4    for my side of these stories; if he had -- I know he

5    asked him about some text messages; how he conducted

6    his -- his work.

7    Q      And do you remember what your ex-husband's

8    attorney asked Dr. Flens about?

9    A      I don't.

10   Q      Okay.  Do you agree with Dr. Flens' opinions?

11   A      I disagree, yes.

12   Q      Which of the three recommendations do you

13   disagree with?  Well, I suppose issues.

14   A      Which three are you -- which three are you --

15   which three are you asking about?

16   Q      In the executive summary, he lists a first,

17   second, and third.  And then I -- I'll go ahead and

18   consider the last one that's beginning, "And most

19   importantly," that would be a fourth.  So which of

20   those four would you disagree with (indicating)?

21   A      (Views document).  Which ones do I agree with?

22   Q      Disagree with.

23   A      The first, the second, and the third, as -- as

24   it relates to some of the issues that he pointed out

25   as the examples that he gave.

Bushman Reporting          800-556-8974
A Veritext Company          www.veritext.com

```
1    Q     So regarding the third issue, your
2    ex-husband's alcohol, you would agree that --
3    A     Oh, sorry.
4    Q     -- you would agree that that was an issue, but
5    you would disagree about the contents of Dr. Flens'
6    report about your ex-husband's alcoholism?  So let
7    me rephrase.
8          You said you agreed that your ex-husband had
9    an alcohol issue; correct?
10   A     Yes.
11   Q     But you disagree with the examples that
12   Dr. Flens used in his report?
13   A     No.  I'm sorry, I think I misunderstood.  I
14   disagree with some of the examples that he used in
15   1, 2, and 4.
16   Q     Okay.
17   A     I do disagree with some of the examples that
18   he failed to include concerning all of these issues
19   that would have given it a more factual and fair
20   assessment.
21   Q     Okay.  Regarding what we're terming the fourth
22   issue, which would be "high-conflict, coparenting,
23   and gatekeeping," would you agree that your
24   husband -- or your ex-husband and you did have a
25   high-conflict, coparenting relationship at the time?
```

Page 22

1   A     Yes.

2   Q     And would you agree or disagree that there was

3   gatekeeping by either you or your ex-husband during

4   the divorce?

5   A     I would disagree that he didn't really -- he

6   pointed that out as more of a focus on me, and he

7   did not indicate efforts for gatekeeping on my

8   ex-husband's part.  And, you know, I don't believe I

9   was gatekeeping.

10  Q     Okay.  Would you still label your coparenting

11  relationship with your ex-husband as high conflict?

12  A     Yes.

13  Q     Has your coparenting situation improved at all

14  since the divorce or has it stayed about the same?

15  A     It has stayed the same, but the -- a lot of

16  the causes for those issues have stayed the same as

17  well.

18  Q     Okay.  And what are the major sources of

19  conflict between your ex-husband when it comes to

20  parenting your daughter?

21  A     Well, we have specific orders that we are

22  supposed to follow and he does not follow a lot of

23  those.

24  Q     And so most of the conflict resolves --

25  revolves around just compliance with court orders?

Bushman Reporting                    800-556-8974
A Veritext Company                   www.veritext.com

1    A      Yes.

2    Q      Are there any other issues that cause conflict

3    with your ex-husband and you regarding your daughter

4    and your parenting situation?

5    A      His lack of concern for safety.

6    Q      And when you say "lack of concern for safety,"

7    what do you mean?

8    A      Basic safety, super -- lack of supervision.

9    Q      Okay.  Do you have any examples to help me

10   understand what you mean by "lack of supervision"?

11   A      What time frame are we speaking about?  Are

12   you asking about during the divorce and the time

13   frame of Mr. Flens' report or are you asking

14   postdecree, are you --

15   Q      How about both, if you have examples.

16   A      I would say, yes, there are -- there are

17   situations where he has put our daughter in unsafe

18   situations.  You know, as of recently, allowing she

19   and another girl that's 13 to sleep overnight in a

20   barn that he can't see or hear, and we had a ruling

21   that -- we received a ruling that he's not allowed

22   to let her do that anymore.

23          There are situations where he's allowed her to

24   use devices that were unmonitored.  During the

25   divorce, there -- you know, there -- there were

Bushman Reporting                    800-556-8974
A Veritext Company                  www.veritext.com

1   various other situations, even postdecree, when she
2   was earlier -- allowing her to be unsupervised in
3   the Roaring River at the Atlantis Hotel by herself
4   and the hotel staff had to look for him -- I mean
5   had to look for him because she couldn't find him
6   because he let her go in almost 4 feet of water by
7   herself that was a mile long.  I mean, there's --
8   there's similar issues that were going on during the
9   divorce as well.
10   Q    Okay.  And does your ex-husband have any
11   issues with the way you parent your daughter?
12   A    He dislikes me involving her in activities.
13   He has alleged that it has been ruled that he was
14   not -- the Court disagreed with his belief that I
15   have her overscheduled.
16   Q    And do you believe at any point that your
17   husband has gate-kept your daughter?
18   A    I believe he's not responsive.
19   Q    Okay.  When you were looking through the
20   report, were there any specific things that jumped
21   out to you that you disagree with?
22   A    I disagree with his inclusion in a lot of
23   these things because there are allegations that --
24   you know, he -- he picked small portions of
25   pleadings, some of them we did not have any type of

Page 25

1    hearing whatsoever, he picked -- so he isn't -- he

2    wasn't aware if any of this information was proven

3    to be true, if we ever had a ruling on it.  Some of

4    these things did not also include my -- my -- my --

5    any -- any information about my responses that

6    were -- that were filed or the activities or things

7    that my ex-husband did.

8    Q     And so your biggest concern with his examples

9    is including essentially allegations that your

10   ex-husband made that were unproven?

11   A     Yes.  And also including information in a

12   report about my attention deficit disorder, mention

13   of medication that I took for my attention deficit

14   disorder, I don't know what documents he received

15   that.  I mean, you know, I think that was private

16   information.

17         He also included information about a third

18   party that was -- he was asked about this in his

19   deposition, those third-party allegations were made

20   in a pleading, and this third party notified my

21   ex-husband's attorney and provided proof, sent him a

22   letter and said, you know, this allegation that was

23   made about me is not true and I would like this

24   corrected in the pleading and I would like for it to

25   be sealed.  And that is what happened and the judge

Bushman Reporting          800-556-8974
A Veritext Company        www.veritext.com

1    sealed that pleading.

2         So -- and that's part of -- in the executive

3    summary, it also discusses about my exposure to --

4    of our daughter to -- you know, I guess the word

5    that's used is "paramour," calling him a violent

6    person.  And what was shown was that that was not

7    true, the al -- the specific allegations that were

8    made.

9    Q    What would you have preferred Dr. Flens to do

10   once he reviewed these records?  And let me clarify,

11   I suppose.  He's going through the records that had

12   been provided from him at your divorce hearing,

13   these are records that have been filed in court,

14   they've been given to him by your ex-husband's

15   attorney and he's reading the various records that

16   have been filed.

17        What would you have liked Dr. Flens to do when

18   he was going through those records and seeing

19   various allegations made by you, made by your

20   ex-husband, various orders by the judge?

21   A     I would have liked him -- for him to -- first

22   and foremost before becoming involved in this case,

23   to contact the Arkansas Board of Psychology to find

24   out what he needed to do to ensure that his -- his

25   involvement was in compliance with the Arkansas

Bushman Reporting                    800-556-8974
A Veritext Company              www.veritext.com

1   board regulations, even as a provisional licensee,

2   what he needed to do, that would be first and

3   foremost what I would have expected a licensed

4   professional to do.

5        I would have also expected that if he received

6   these pleadings, to find out if there were actually

7   rulings to -- you know.  And it's not just my

8   preference, it's what his professional ethics from

9   the American Board of Psychology require people that

10  hold licenses to do, is to be professional and to,

11  you know, check facts, to be unbiased, to be

12  truthful.

13  Q    And how do you believe that Dr. Flens was

14  untruthful?

15  A    Well, given this example that I just gave

16  about the third party being a violent individual,

17  that was -- the pleading that he relied upon had to

18  be corrected by this -- by my ex-husband's attorney;

19  so he received a pleading, and this third party

20  demanded that that pleading be corrected because it

21  wasn't truthful.  And it was corrected and the judge

22  even sealed the pleading so that, you know, it

23  wasn't -- it couldn't be accessed in any way because

24  it wasn't truthful.  And so that -- that issue is --

25  you know, my attorney, during the divorce, asked

1    Mr. Flens if he verified any of this information and
2    he said no.
3    Q     And so I believe you're talking about page 4
4    on the report.  Could you turn to page 4?
5    A     (Complies.)
6    Q     Is this the area in the report that you were
7    discussing previously?
8    A     (Views document).  Yes.  Number 2.
9    Q     To your knowledge, was there a police report
10   attached to your ex-husband's second motion for
11   contempt?
12   A     It was blank.
13   Q     The police report was?
14   A     Yeah.
15   Q     Okay.  And No. 3, was there -- was there -- do
16   you recall if there was something attached as
17   Exhibit B regarding that allegation?
18   A     It's my belief it was blank as well.
19   Q     Okay.  So your understanding was there was --
20   neither of these things were attached as exhibits
21   or, if they were attached as exhibits, there was no
22   substance?
23   A     Correct.  And also, he didn't verify -- if
24   he -- if he did receive those, why would he include
25   those if the police reports were blank?

Bushman Reporting                          800-556-8974
A Veritext Company                      www.veritext.com

1    Q     So at no point have you seen either of the

2    reports mentioned on page 4 of the report as

3    attached Exhibit A or attached as Exhibit B?

4    A     I did when the pleading was filed.

5    Q     But there was -- there was no police report

6    attached?

7    A     There was.

8    Q     Okay.  There was?

9    A     But they were both blank.  In fact, that was

10   referenced in this third party's letter to Mr. Kidd.

11   Q     What do you mean by the police report was

12   blank?

13   A     There was nothing on it.  It was a blank

14   police report.

15   Q     So it was like a template for a police report?

16   A     Yes.

17   Q     And so there was nothing filled in?

18   A     Correct, uh-huh.

19   Q     Okay.  I understand now.  All right.

20         Is there anything further you think Dr. Flens

21   should have done in compiling this report?

22   A     I think he should have followed, as I

23   mentioned first and foremost, the State Psychology

24   Board rules.  I think he should have also attempted

25   to fact check the information that was provided to

Bushman Reporting
A Veritext Company
800-556-8974
www.veritext.com

1    him or to find out if there was a response filed or
2    a reply filed or to at least -- at least after the
3    deposition, when he was made aware that there was
4    information that was not correct, done the due
5    diligence that a professional with integrity would
6    do, is to say, hey, I need -- I need more
7    information, you know, I became aware during this
8    deposition that what I may have put in this report
9    may not be correct; and if I am going to be
10   testifying at a final hearing, I want to make sure
11   that, you know, corrections are made.  And he did
12   not do that.
13   Q    At any point during the divorce, did you make
14   allegations in the pleading that your ex-husband
15   disputed that you disagreed with his -- his
16   characterization of the facts?
17   A    Oh, absolutely.
18   Q    And were there allegations made by your
19   ex-husband that you disagreed with?  When your
20   ex-husband filed, say, for example, the second
21   motion for contempt, did you disagree with the facts
22   alleged?
23   A    Which is the second motion for contempt?
24   Q    The portion of the report we were just
25   speaking about.

Bushman Reporting                    800-556-8974
A Veritext Company              www.veritext.com

1    A      I believe so, yes.

2    Q      So how do you believe, when there's disputed

3    facts made by both you and your ex-husband,

4    Dr. Flens should have verified the truthfulness of

5    either your or your ex-husband's allegations?

6    A      Well, I think the honest thing to do, if he's

7    going to prepare a report, put not just my

8    ex-husband's allegations, perhaps also include what

9    my -- what my response to the pleading may have

10   said.  He didn't know because he'd never spoken to

11   me, he'd never asked what the response to this was.

12   To my -- you know, it appears from this report,

13   there were other pleadings that, you know, it

14   appears from his report, that he didn't really

15   intend to verify any response, any -- my side on a

16   lot of these issues.

17   Q      If your ex-husband would have had a romantic

18   partner at the time of your divorce and you believed

19   that your ex-husband was exposing your daughter to

20   that person, do you believe that would have been an

21   issue that should have been raised in your divorce

22   proceedings?

23   A      Yes.  But that doesn't mean that that person

24   is dangerous.

25   Q      Would it be a bigger issue if you believe that

Page 32

1    the person may be a danger to your daughter?

2    A      Well, we would have had -- I don't believe we

3    had a hearing on this issue.  We didn't have -- we

4    didn't have a hearing on this issue, so it's my

5    understanding -- it's my recollection that we never

6    even had a ruling on this.

7    Q      But if you raised concerns that you thought

8    were valid and your ex-husband disputed those --

9    those allegations, whether he was being truthful or

10   not, how would Dr. Flens be able to tell between

11   your side and his side who was actually being

12   truthful in that situation?

13   A      Which is my concern.  He -- he -- he -- he

14   chose what side he was going to take, he chose what

15   he was going to believe and put in this report,

16   whether he knew the facts or not.

17   Q      Had you exposed your daughter to someone

18   you're romantically involved in and had that person

19   had a criminal -- a violent criminal history, do you

20   think that would have been an issue that Dr. Flens

21   should have included in the report?

22   A      If he verified it.

23   Q      Is there a way for Dr. Flens to have verified

24   whether that was true or false if you contested

25   those allegations?

Bushman Reporting                    800-556-8974
A Veritext Company              www.veritext.com

1    A      He is -- he is -- so hold on.  Could you ask

2    that question again, please?

3    Q      Yes.  Your ex-husband made allegations --

4    A      Uh-huh.

5    Q      -- that you had exposed your daughter to a

6    romantic partner and that that romantic partner had

7    a violent history -- or at least had an instance of

8    violence.  How should have -- how could have

9    Dr. Flens verified whether those were true or not if

10   you denied those allegations?

11   A      He could have included my dispute of those

12   allegations in his report so that it was not biased,

13   so that it was truthful and fair.  He -- when -- as

14   I mentioned a moment ago, he was notified in the

15   depositions, after we were able to review his

16   report, that there were false -- there -- there were

17   false -- there was false information in -- in

18   several areas of the report.

19          And he went back to Florida and didn't --

20   didn't ask -- to my knowledge, I'm not aware of him

21   asking for more information from my ex-husband or

22   his attorney so that he could do the ethical thing,

23   which would be to clarify anything that needed to be

24   corrected.

25          After I filed law -- you know, after I filed

Bushman Reporting                    800-556-8974
A Veritext Company              www.veritext.com

1    the first lawsuit, he was not willing to make any
2    retractions or corrections that someone with
3    professional integrity would do.
4    Q     So had you hired Dr. Flens to complete a
5    report, do you think Dr. Flens should have included
6    every -- your husband's side to everything you said
7    in the report?
8    A     Well, he included that he's an alcoholic, he
9    included information about his alcoholism, so it
10   appears he was trying to make this appear somewhat
11   balanced.  He was trying to appear in some way that
12   he was not biased.  But, you know, there's
13   information that he absolutely did not know if it
14   was correct or not.
15          And if you're going to do -- you know, he
16   serves on a Professional Conduct Committee -- or at
17   least sometime during his career, he served on a
18   Professional Conduct Committee for attorneys in
19   Florida, and, you know, relying just on legal
20   documents, I think it's a very poor way to, you
21   know, create some type of report about this.
22          How does he not know that -- how does he know
23   if any of these issues were on appeal?  Mistakes
24   happen in pleadings.  That's -- rulings -- mistakes
25   are made in rulings, that's why we have an appeals

Bushman Reporting                    800-556-8974
A Veritext Company              www.veritext.com

1  process, that's why we have a judicial system.  And

2  to utilize your license to put just what someone

3  pays you to put is -- it's very concerning.

4  Q    Let's say there was a report about your

5  ex-husband letting your daughter go in the river

6  thing at Atlantis and your husband denied that was

7  the case, do you think Dr. Flens should have

8  included his side in the report (gesturing)?

9  A    If he's going to rely on court documents, yes.

10 Q    Even though you believe that your husband let

11 your daughter go in that water fixture by herself

12 (gesturing)?

13 A    He is supposed to be truthful and fair,

14 according to, you know, rules that govern his

15 license.

16 Q    Where do you believe in this report that

17 Dr. Flens said that he knows that this third party

18 was violent?

19 A    Well . . . (views document).  His choice of

20 including it gives the -- the reader that this is

21 his assessment.  I mean, he's -- he in -- he picked

22 select language from the pleading and, you know,

23 he's -- he's -- and it's all -- his report is

24 all-encompassing.  He's saying that he -- and he

25 even said in his deposition that he just took

Page 36

1    everything at face value, those were his words,
2    "face value."
3    Q     But would you agree that Dr. Flens, in his
4    report, simply says that these are issues that
5    should maybe be investigated further?
6    A     That's why we were having a court system.  I
7    mean, that's why we were having hearings, that's
8    why -- you know, he's trying to be involved in the
9    legal proceedings, it appears to me.  You know, that
10   was for the judge to determine, and we didn't have a
11   hearing on that.
12   Q     But where --
13   A     I mean --
14   Q     -- where in here does Dr. Flens say that these
15   are facts?
16   A     Well, he's saying that he took all of these
17   from -- by including them in the report and
18   including them and even saying, "I took these from
19   court documents," if he -- if he's not -- if he's
20   putting them in writing, he is implying that he
21   believes they're facts.  He's not saying, I read
22   these and I don't know if these are true or not, I
23   don't know if these are allegations, I don't know if
24   there have been rulings made on these pleadings on
25   all of them, I don't know if the plaintiff has filed

Page 37

1   responses or rulings, but if I'm going to take just
2   this -- what my -- you know, what the person who
3   paid me said, this is what I'm going to put.
4   Q     But you can't -- scratch that.
5         But as far as you know, there's nowhere in
6   this report where Dr. Flens says it is a fact that
7   Angela Moody exposed her daughter to a paramour and
8   that paramour had a violent history?
9   A     Could you ask that again?
10  Q     Yes.
11  A     I think you asked that already.
12  Q     To your knowledge, is there anywhere in this
13  report where Dr. Flens says that it is a fact that
14  you did expose your daughter to a romantic partner
15  who was violent?
16  A     (Views document).  That's what he wanted the
17  reader to believe.  That's my opinion that he wanted
18  the reader to believe that because he chose language
19  that states that he was a violent -- a violent
20  person.
21  Q     But --
22  A     "Physical battery," those are the -- he was --
23  it says, "He has been charged with third-degree
24  battery wherein he was accused of physical battery."
25        He was never charged, he's never been charged

Bushman Reporting                          800-556-8974
A Veritext Company                      www.veritext.com

1   with a crime.  That is absolutely false.

2   Q     But does Dr. Flens say that's a fact or does

3   Dr. Flens say that this document contains this

4   quote?

5   A     He's saying he reviewed documents and that's

6   what was stated and that's what he included.  And he

7   did not fact check, and he admitted that.  And

8   Mr. Harrelson has never been charged with a -- with

9   third-degree battery.

10  Q     But as far as you know, Dr. Flens has never

11  himself said that Mr. Harrelson has been accused of

12  third-degree battery?

13  A     He included it in his report that he signed

14  his name to.  And he has a duty by the American

15  Psychology Association, you know, his ethical

16  requirements, that require him to check facts.  And

17  he admitted that he did not.

18          THE WITNESS:  Can we take a break?

19          MR. STEPINA:  Yes.

20          MR. HICKS:  Yeah.

21          (A brief recess is taken.)

22  BY MR. STEPINA:

23  Q     All right, Ms. Moody.  Before the break, I was

24  asking you whether or not you believe these

25  statements were statements that Dr. Flens was saying

1   were factual; was that correct?

2   A     I believe he implied that he believed they

3   were because he included them in his report.  And --

4   and didn't investigate to find out if there were

5   other pleadings that were -- that did not present my

6   ex-husband in the best light.  There were quite a

7   few other pleadings during the time frame that he

8   reviewed pleadings but did not -- that would not

9   have made him look -- I mean, that would have not

10  been very becoming of him.

11  Q     Well -- but the report does contain some

12  information that's not very becoming of your

13  ex-husband, doesn't it?

14  A     It only included his alcoholism, it did not

15  include other -- it didn't include other conduct

16  that was included in pleadings.

17  Q     But it does include information from pleadings

18  related to your ex-husband's alcohol use?

19  A     Some.

20  Q     And do you believe the amount of information

21  from the pleadings about your ex-husband's alcohol

22  abuse was insufficient?

23  A     I believe he included information.  I'm saying

24  that he didn't include a lot of other information

25  that was filed in pleadings.

Page  40

1   Q     Do you believe there is information in
2   pleadings about you that was not included in this
3   report?
4   A     It's possible.
5   Q     So it's possible that there's information
6   about both you and your ex-husband that's not in
7   this report?
8   A     Well, it's certain that he did not include
9   information, other information about my ex-husband
10  other than his alcoholism.  He included a whole lot
11  about me, though.
12  Q     Can you identify in this report any statements
13  of fact that are incorrect about you?
14  A     Can you explain that?  Statements of facts
15  that are incorrect?
16  Q     Yes.  Can you identify any point in this
17  report where Dr. Flens says:  It is a fact about
18  Angela Moody that -- or something to that extent?
19  A     (Views document).  Okay.  In -- on page 2, in
20  paragraph 12, he stated I was concealing an
21  underpayment.  He included this police report that
22  said -- and -- and Ed did file this report and said
23  that I had stolen his cell phone, but that was not
24  factual and he did not investigate if that was
25  factual.  In fact, a pleading was filed regarding

Page 41

1  this, and my attorney filed a response that provided
2  the facts.  Had he -- but he did not do that, he
3  didn't include my attorney's response to that.
4        The Russell & LeMay Plumbing & Heating, he
5  only used a small -- he made -- he made a summary of
6  that whole entire issue.  In fact, Mr. LeMay was
7  actually going to be one of my witnesses at my final
8  hearing because the whole situation was
9  mischaracterized in this.  In fact, Mr. LeMay, you
10  know, helps -- still helps with my plumbing issues.
11        We have pleadings that were during this time
12  frame that show that my ex-husband was required by
13  order to pay maintenance.  There was an order
14  requiring him to pay maintenance bills on the
15  marital home, and he -- we have orders showing that
16  he was not complying with that.  That is what
17  resulted in the lawsuit with Russell & LeMay.
18        So he -- he put this -- you know, this little
19  summary in here, but he did not include the full
20  story.  And -- or that my ex-husband wasn't
21  complying with orders that got us into that
22  situation (indicating).
23        He -- and that's one of the examples I'm
24  giving, is that there -- there were various
25  pleadings, but he did not do what is required of --

Page  42

1   of -- or ethical to correct.  And when my attorney

2   put him on notice in that deposition that this

3   report contained a lot of inaccuracies, he didn't

4   even attempt to do the right thing, to withdraw his

5   report or make corrections or clarifications or he

6   didn't say, well, if she has a side to this, let me

7   include that; if there's more information that I

8   have not been privy to, could you provide that to

9   me, he didn't do that either.  He was okay with

10  leaving this the way it was.

11  Q    But regarding any of the things that you just

12  told me about the police report, about Russell,

13  LeMay and plumbing, does Dr. Flens say those things

14  happened or does he summarize or report what

15  documents he reviewed say?

16  A    He cherry-picked.  He was selective in what he

17  chose to put in this report.  He didn't -- he didn't

18  include ple -- response pleadings that were filed or

19  review orders to include this, he didn't thoroughly

20  read what he was writing about.  He admitted in his

21  deposition that he just relied upon what was given

22  to him, and he didn't ask for anything further and

23  did not fact check.

24       And he's making -- in his executive summary,

25  making opinions about my character and integrity

Page 43

```
 1   when he admitted he also didn't fact check or
 2   thoroughly review information provided to him or
 3   find out my side, and so he made some pretty big
 4   statements about me as a person without ever
 5   speaking to me or even thoroughly reviewing the
 6   court record.
 7        If he is going to say that he relied on the
 8   court record, then he should have relied on all of
 9   it, especially on the issues that he chose to
10   summarize and -- and give this -- he chose what he
11   thought would support his agenda for saying that I
12   had character -- characterological issues.  But he
13   didn't include in here, like, for example, on
14   Russell, LeMay, that -- oh, but Mr. Moody failed to
15   follow the orders for paying for home maintenance
16   billing; and as a result, the parties were sued by
17   Russell, LeMay.
18   Q    But you can't -- can you show -- can you point
19   to any point in this report where Dr. Flens says the
20   information in here is a fact, I am making a
21   statement of fact about Angela Moody?
22   A    He's -- he wrote a report.  He's choosing and
23   he's saying I'm relying on court documents.  I mean,
24   that's -- it's -- he is -- he is implying that he
25   believes that it's fact by writing the report
```

Page 44

1  (gesturing).  And he didn't fact check.  I mean,
2  that's not my requirement, it's -- it's -- it's his
3  ethical obligation.
4       And, you know, going back to the root of this,
5  he wasn't -- he wasn't following the Arkansas Board
6  of Psychology rules for even having any engagement.
7  And he was planning to come testify.
8  Q    Isn't the conclusion of Dr. Flens' report that
9  you and your ex-husband should be evaluated by a
10 psychologist?
11 A    That's what his report says.
12 Q    So was the purpose of his report not to
13 identify issues that he -- he thought should be
14 investigated further?
15 A    Going back to the root of this, he wasn't
16 entitled to say that unless he had followed our
17 Arkansas Board of Psychology rules.
18 Q    You are suing Dr. Flens about information that
19 you say is factually inaccurate that Dr. Flens
20 said --
21 A    Well --
22 Q    -- is that correct?
23 A    -- yes.  Because he is putting -- he chose to
24 put this in a report and -- he has written, and it's
25 my understanding it's -- it's libelous.

Page 45

1    Q     So can you identify to me statements of fact

2    about you in this report?

3    A     (Views document).  Well, I mean, throughout

4    here, he's saying things like "this appears,"

5    this -- like -- I mean, he's trying to -- it's

6    almost like he is trying to litigate this.  "This

7    appears to be in direct conflict with the temporary

8    order in addition to" -- you know, I mean, he's

9    cherry picking.

10        I thought it was very bold of him to include

11   information about my attention deficit disorder.  I

12   don't even know where he got that information, you

13   know.  There are numerous -- there are numerous

14   areas.

15   Q     Okay.  Let's move on.

16        How has this report affected you?

17   A     Hang on just a second.  (Views document).

18        Oh, can I back up?  Can I state something?  In

19   his conclusions and recommendations, he says, "I

20   have reviewed numerous documents that have been

21   generated by Angela Moody and Edward Moody over the

22   course of several years."

23        I did not provide him any documents.  I

24   wasn't -- he didn't request any documents from me.

25   I didn't know about this report until after it was

Page 46

1   created, so I did not generate any documents --

2   Q      But your --

3   A      -- for him.

4   Q      -- attorneys generated documents that he has

5   reviewed?

6   A      Not to him.  They did not give him any

7   documents.

8   Q      But he doesn't say that you gave him

9   documents.

10  A      But he -- he says I generated them.  He said,

11  "I have reviewed numerous documents that have been

12  generated by Angela Moody."  Then what documents is

13  he referring to that I generated?  And I didn't

14  generate those doc -- these pleadings, my attorneys

15  did.  My attorneys either filed pleadings or they

16  responded to pleadings.

17  Q      Okay.  How has this report affected you?

18  A      It has -- even as of June of 2022, my attorney

19  had to file a motion in limine because my

20  ex-husband's attorneys continue to use this report

21  uncorrected, unmodified, unclarified, un -- you

22  know, they -- Dr. Flens never withdrew it.  They

23  continue to use it.  They tried to use it in our --

24  in a custody hearing in 2019.  In 2017, my

25  ex-husband has distributed it to multiple people.

1  He has discussed it with our daughter and upset her
2  incredibly in a therapy session in November of 2021.
3      You know, he talks about it to people.  He --
4  you know, it was even said in a court hearing in
5  March of 2022 that they wanted to be able to include
6  Dr. Flens.  And, you know, it's -- they continue to
7  use this and continue to harass me with this.
8      And if Dr. Flens had been -- done the ethical
9  thing when he was notified in his deposition in
10  October of 2014 that there were problems with this
11  report, I mean, I'm surprised -- I'm shocked that he
12  would not correct -- you know, even attempt to make
13  corrections.
14      It's been upsetting.  You know, my -- as I
15  mentioned, you know, my ex-husband has used this as
16  a tool to continue to try to shame me because he --
17  you know, he's even said -- a psychologist even, you
18  know -- I mean, he's said horrible things about me
19  through -- throughout using this.  This has been
20  used as a weapon.  It's been used -- you know, this
21  report came out just a few months before our final
22  hearing.  It put extreme pressure on me to, you
23  know, settle this report -- I mean to settle our
24  divorce.  I, you know, settled for less than I
25  probably should have.  All of this was so -- put so

Bushman Reporting                    800-556-8974
A Veritext Company               www.veritext.com

1    much pressure on me and it's continued to put

2    pressure on me.

3         In twenty-seven -- like I said, year after

4    year, this constantly comes up.  And, you know,

5    Dr. Flens, you know, carries -- you know, promotes

6    himself as this child custody expert but isn't going

7    to check facts?  You know, if he's trying to help --

8    help people, he ought to follow what the

9    requirements are in each state and follow what his

10   license requirements and ethical -- professional

11   ethical requirements are because not doing that

12   doesn't help anyone.

13   Q    So is there anything -- has this report

14   affected you in any other way other than being used

15   in your divorce and postdivorce proceedings and

16   being upsetting to you?

17   A    You know, what more do you want?

18   Q    I want to make sure --

19   A    What are you asking specifically?

20   Q    I want to know everything that -- how this

21   report has affected your life the way you think this

22   report has affected your life.  So I want to make

23   sure I have --

24   A    I've had to spend money for -- for therapy,

25   I've had to spend money during the divorce and

Page 49

1   postdecree hearings to -- I've had to spend

2   substantial attorneys' fees during the postdecree

3   hearings and -- and child custody issues to -- to

4   fight this and their attempt to use Dr. Flens

5   (indicating).

6   Q     So were you -- were you receiving any therapy

7   prior to your divorce?

8   A     Some.

9   Q     And did you receive therapy throughout your

10  divorce proceedings?

11  A     Some.

12  Q     And have you continued to receive therapy

13  postdivorce?

14  A     Yes.

15  Q     And has that therapy been about this report?

16  A     It's been -- it's been one of the -- one --

17  you know, a large issue because it keeps coming up.

18  Q     Have you received any diagnosis from a medical

19  doctor after this report has been issued?

20  A     I haven't received a diagnosis.

21  Q     Have you been prescribed medication to take

22  because of this report?

23  A     Not because of this report, no.

24  Q     To your knowledge, has Dr. Flens given this

25  report to anyone other than your ex-husband and his

1   attorney?

2   A      I do not know that.  Wait.  Could you ask that

3   question again?  Did you say to my ex-husband and

4   his attorney or my attorney?

5   Q      "His attorney."

6   A      Okay.  Yeah.  I'm not aware.

7   Q      To your knowledge, do you have -- do you -- is

8   there a reason that you think Dr. Flens should have

9   known that your ex-husband was going to share this

10  report with other people?

11  A      Would you ask that again?

12  Q      Yes.  You have said that your ex-husband has

13  shared this report and continues to share this

14  report.

15  A      (Nods head up and down.)

16  Q      Why do you believe that Dr. Flens should have

17  known that your husband would do so?

18  A      It would -- I would think that he would put

19  restrictions on this document on the use of it.

20  Q      What sort of restrictions do you think

21  Dr. Flens could place on your ex-husband's use of

22  this document?

23  A      You know, to state in the document that this

24  is, you know, for, you know, purposes of, you know,

25  this divorce and it's not to be distributed to

Page 51

1    harass anyone or harm them in any way, and that's
2    what has been happening.
3    Q      Can your forensic accountant control whether
4    or not you share information regarding your
5    husband's finances or the marital estate to third
6    parties?
7    A      She -- I'm not understanding.
8    Q      Could she prevent you from sharing information
9    that she has given you about the marital estate to
10   third parties?
11   A      The information that she has given me is the
12   same information that has been used in, you know,
13   for example, our -- our final hear -- our -- our
14   final hearing, that was attached to our final
15   hearing as an exhibit.
16   Q      Have you ever discussed anything in her
17   reports with people other than in your divorce
18   proceedings?
19   A      That's -- I can't -- I can't -- I can't recall
20   right now.
21   Q      So you -- at no --
22   A      But -- but accountants and mental health
23   professionals have a different set of standards.
24   Psychologists, you know, have rules and requirements
25   about, you know, privacy and HIPAA.  And, you know,

                                            Page 52

1  they have a dif -- a different set of professional
2  requirements.
3  Q    But your forensic accountant could not prevent
4  you from speaking about what was in her reports that
5  you have in your possession?
6  A    Nor would she.  Because that information is
7  not protected by the -- you know, I mean, there are
8  laws regarding -- that psychologists are required to
9  follow.
10 Q    Does any information in the for -- any
11 forensic -- any report prepared by your forensic
12 accountant concern any of the clients of your
13 husband's law firm?
14 A    No.
15 Q    Does it concern any of the financial
16 information regarding your husband's law firm?
17 A    No.
18 Q    So there was no dispute whether or not money
19 in your husband's IOLTA (pronounced differently)
20 account was part of the marital estate?
21 A    He disputed it, but there -- there was no
22 dispute of that, but that was actually pled in one
23 of the pleadings.  But, also, Mr. Flens did not
24 include that, and that was in one of the pleadings,
25 but that was in the time frame that he was engaged.

Page 53

1    Q      So did the forensic accountant review whether

2    or not, in her opinion, those finances were part of

3    the marital estate?

4    A      Yes, she did.  And that was included in one of

5    our pleadings.

6    Q      Do you not believe that information --

7    information in an attorney's attorney account, to

8    put in quotes, is private information (gesturing)?

9    A      Not if it's marital.  And it was.  And

10   Dr. Flens did not include that in his report.

11   Q      Was there any -- was the entirety of your

12   husband's attorney account, to put it -- was it all

13   the marital estate or was there portions of it that

14   were not part of the marital estate?

15   A      $12 million was part of the marital estate.

16   Q      But --

17   A      And Dr. Flens did not include that in his

18   report, and that was wrong too.

19   Q      But there were portions of the -- of the

20   finances in those accounts that were not part of the

21   marital estate?

22   A      Correct.

23   Q      And that information -- the finances related

24   to clients of your husband, do you not believe that

25   information is private?

Page 54

1    A      She didn't disclose -- she didn't disclose any
2    private information in his IOLTA account related to
3    clients.  What she disclosed was the money that was
4    marital that he was keeping in his IOLTA account.
5           But, again, as I said earlier, psychologists
6    have a different set -- a completely different set
7    of professional requirements, ethical requirements
8    and legal requirements.  And, you know, we were
9    talking about my -- you know, Dr. Flens.
10   Q      But you agree with me that she could not
11   prevent you from discussing her report with third
12   parties?
13   A      I can't comment on that.
14   Q      Why not?
15   A      Because I'm -- I -- I am not aware of what the
16   accountant's rules or requirements are.  And
17   information that she was providing were information
18   that -- her work was intended for the purposes of
19   our pleadings.
20   Q      How would she know whether or not you
21   discussed that information with a third party?
22   A      I think if it's included in a pleading and
23   it's public record, it's -- anyone can discuss it.
24   Q      How should Dr. Flens know that your husband is
25   discussing this report with other people?

Bushman Reporting                    800-556-8974
A Veritext Company                  www.veritext.com

1   A     Well, we have filed pleadings.  And he was --
2   well, in our complaints.  And he was aware -- you
3   know, aside from the distribution of it, he was
4   aware in 2014 that there were -- there was incorrect
5   information in these reports, and he -- the
6   professional thing to do would have been to stop it
7   there and make corrections.
8   Q     But Dr. Flens could not control whether or not
9   your husband discusses anything in this report with
10  a third party?
11  A     I'm not talking about discussing.  I'm saying
12  the report itself, once he was made aware, even in
13  that -- even in that deposition that there was false
14  information, the professional thing to have been
15  done would have been to have withdrawn that report
16  to say, hey, you know, I -- I'm hearing -- from that
17  deposition, I've been made aware that there's
18  incorrect information, that there's some false
19  information in there that I need to correct.
20  Q     Had Dr. Flens withdrawn his report as you
21  believe he should, would that have prevented your
22  husband from discussing this report with third
23  parties?
24  A     It would have -- what it would have done is if
25  he had submitted a corrected report, one that didn't

Page 56

1    include cherry-picked information and included
2    actually my responses to some of those cherry-picked
3    allegations, then there would have been a corrected
4    report.
5    Q    But your husband -- Dr. Flens couldn't make
6    your husband discuss the corrected report with
7    people; correct?
8    A    He could have withdrawn -- he could have done
9    everything in his power to make sure that, you know,
10   a document that his signature is on and that he's
11   utilizing, trying to utilize his professional
12   credentials, had been withdrawn, that's what -- but
13   that's in his control.  He didn't do anything in the
14   realm of his control.
15   Q    After he produced this document to your
16   ex-husband and your ex-husband's attorney, how could
17   Dr. Flens have controlled their use of this
18   document?
19   A    I believe I -- I believe I've answered that.
20   To the best of my -- you may not like my answer, I'm
21   sorry, but I believe I've answered that.  He could
22   have done what was in his control, which was to --
23   after he learned that there was information at the
24   deposition, that there was information that was not
25   correct and not true and that there appeared to be

Page 57

1 bias, that he could have done with -- what was

2 within his control, and that would have been to

3 correct it and withdraw it.

4   Even whenever he realized that there was still

5 a problem with this in 2017 when the -- another --

6 when the initial complaint -- when I filed the

7 initial complaint, he could have done it then.  I

8 feel like he's had numerous opportunities to act in

9 good faith and to be ethical, and he has not -- he

10 just wants this to go away, wants to leave this

11 report as is and does not seem to care.

12 Q Have you told me every way this report has

13 affected you?

14 A I mean, as of today -- as of today, I think

15 so.

16 Q Who has your ex-husband given this report to?

17 A They have attempted to give it to two judges

18 that we have had.  He has given it to a coparenting

19 therapist.  He has given it to a -- he said he was

20 giving it -- we had a therapy session with a

21 therapist that we were anticipating engaging to

22 provide therapy for our daughter.  And in a session

23 with this therapist and my ex-husband and my

24 daughter and I, he started talking about this report

25 and said that he was going to be dropping it by her

Page 58

```
 1    office.  And that was in 2018 in front of our
 2    daughter.
 3    Q    Other than not fact checking, other than not
 4    withdrawing this report, other than not complying
 5    with the Arkansas State Board rules and regulations,
 6    is there anything that we have not discussed that
 7    you think Dr. Flens should have done differently
 8    regarding this report?
 9    A    I think he should have complied with the
10    American Board of Psychology ethical rules.
11    Q    Anything else?
12    A    Probably, but this is -- I'll -- this is --
13    I'll -- I'll stop here.
14          MR. STEPINA:  Let's take a quick break.  I
15          think I'm done, but I would just like to
16          double-check.
17          THE WITNESS:  (Nods head up and down.)
18          (A brief recess is taken.)
19    BY MR. STEPINA:
20    Q    And real quick, at the report, if you'll look
21    at pages 10 through 15.
22    A    Okay.
23    Q    Is it your understanding that that is a list
24    of what Dr. Flens reviewed before preparing this
25    report?
```

Bushman Reporting
A Veritext Company

800-556-8974
www.veritext.com

1    A     Yes.

2    Q     Do you have any reason to doubt that that list

3    is accurate?

4    A     (Views document).  It's incomplete, for sure.

5    Q     Do you have any reason to believe that he did

6    not review a document that is included on this list?

7    A     Well, he left out -- he left out, you know, my

8    side in a lot of these summaries, summarizations

9    that he gave.  And, you know, it's my belief that

10   there are -- you know, including like Angela Moody's

11   authorizations for Adderall prescription, you know,

12   notes regarding the cellular phone, I don't know

13   what that is.  I mean, I certainly don't have access

14   to that nor did I.  I don't know what he was given.

15   You know, he had no attachments or exhibits to this

16   to show what he relied upon.

17   Q     But do you know -- do you have any reason to

18   believe that he did not look at the documents

19   included on this list?

20   A     I -- I really can't answer that question

21   because I -- I -- I mean -- I mean, he looked at

22   something.  But, you know, he omitted -- he omitted

23   things and didn't fact check information on these

24   documents.

25   Q     Do you have any reason to believe that

Page 60

1    documents he did review are not included on this

2    list?

3    A      Probably.

4    Q      Is there anything today that we haven't

5    covered about how this document has affected you?

6    A      You know, again, I think I answered this

7    already.  You know, as of today -- as of today, no.

8    Q      I'm just trying to make sure I haven't missed

9    something --

10   A      Uh-huh.

11   Q      -- some way that has affected you --

12   A      Uh-huh.

13   Q      -- that's why I ask that question.

14          MR. STEPINA:  I don't have any further

15       questions.

16          MR. HICKS:  I'll reserve my questions for

17       trial.

18   (Whereupon, the taking of the plaintiff's testimony

19   was concluded at 3:40 p.m.)

20

21

22

23

24

25

1                              C E R T I F I C A T E

2       STATE OF ARKANSAS            )
3                                    )ss
        COUNTY OF PULASKI            )
4
                        I, Mike Mirelez, Certified Court Reporter,
5       Registered Professional Reporter, Certified Realtime
        Reporter, and Notary Public, do hereby certify that
6       the facts stated by me in the caption on the
        foregoing proceedings are true, and that the
7       foregoing proceedings were reported verbatim through
        the use of the stenographic method and thereafter
8       transcribed by me or under my direct supervision to
        the best of my ability, taken at the time and place
9       set out on the caption hereto.
                        I further certify that in
10      accordance with Rule 30(e) of the Rules of Civil
        Procedure, review of the transcript was not
11      requested.
                        I further certify that I am not a relative
12      or employee of any attorney or employed by the
        parties hereto, nor financially interested in the
13      outcome of this action, and that I have no contract
        with the parties, attorneys, or persons with an
14      interest in the action that affects or has a
        substantial tendency to affect impartiality, that
15      requires me to relinquish control of an original
        deposition transcript or copies of the transcript
16      before it is certified and delivered to the
        custodial attorney, or that requires me to provide
17      any service not made available to all parties to the
        action.

18

19              WITNESS MY HAND AND SEAL this 3rd day of
        March, 2023.
20

21

22              MIKE MIRELEZ
                Certified Court Reporter
23              Registered Professional Reporter
                Certified Realtime Reporter
24

25

MIKE MIRELEZ
NOTARY PUBLIC
PULASKI COUNTY, ARKANSAS
COMM. EXP. 11/10/2029
COMMISSION NO. 12373818

ARKANSAS SUPREME COURT
MIKE MIRELEZ
NUMBER 722
CERTIFIED COURT REPORTER

Page 62

**[& - agreements]**

| & | | | |
|---|---|---|---|
| **&**  42:4,4,17 | | | |

**1**

**1**  3:7 18:14,20
18:22 22:15
**10**  59:21
**12**  41:20 54:15
**13**  24:19
**1323**  2:14 4:8
**15**  59:21
**18**  3:7
**1:55**  1:25 4:8
**1st**  11:3

**2**

**2**  22:15 29:8
41:19
**200**  2:7
**2004**  8:10
10:17
**2005**  8:12
**2011**  10:12,19
11:3 16:6
**2012**  11:12
**2013**  17:13
**2014**  16:13
17:13,13 20:8
48:10 56:4
**2015**  11:6
**2017**  47:24
58:5
**2018**  59:1
**2019**  47:24
**2021**  48:2

**2022**  12:18
47:18 48:5
**2023**  1:25 4:5
62:19
**20th**  7:9
**2nd**  1:25 4:5

**3**

**3**  29:15
**30**  62:10
**30th**  12:17,18
**330**  1:10
**3:40**  61:19
**3rd**  62:19

**4**

**4**  22:15 25:6
29:3,4 30:2
**435-3190**  2:8
**4:22**  1:10

**5**

**5**  3:4
**500**  2:7
**501**  2:8,15

**6**

**62**  3:5

**7**

**72201**  2:7
**72202**  2:15

**8**

**8th**  11:6

**9**

**920-7298**  2:15

**a**

**ability**  62:8
**able**  33:10
34:15 48:5
**above**  4:4
**absolutely**
31:17 35:13
39:1
**abuse**  40:22
**academic**  13:10
**access**  60:13
**accessed**  28:23
**accordance**
62:10
**account**  53:20
54:7,12 55:2,4
**accountant**
15:9,10,15
52:3 53:3,12
54:1
**accountant's**
55:16
**accountants**
15:13 52:22
**accounts**  54:20
**accurate**  60:3
**accused**  38:24
39:11
**act**  58:8
**action**  62:13,14
62:17
**activities**  25:12
26:6
**actually**  19:23
19:24 28:6

**33:11 42:7**
53:22 57:2
**ad**  18:9
**added**  11:17
**adderall**  60:11
**addition**  46:8
**address**  6:21
**admitted**  39:7
39:17 43:20
44:1
**adopt**  19:14
**advised**  15:14
**affect**  62:14
**affected**  46:16
47:17 49:14,21
49:22 58:13
61:5,11
**affects**  62:14
**agency**  15:22
**agenda**  44:11
**ago**  12:20
34:14
**agree**  11:7 19:3
19:6,11 21:10
21:21 22:2,4
22:23 23:2
37:3 55:10
**agreed**  4:14
13:16,17 22:8
**agreement**  4:9
12:7 13:4,6
17:10
**agreements**
14:3

**[ahead - becoming]**

| | | | |
|---|---|---|---|
| **ahead** 6:2 | **answer** 5:19,22 | **asked** 20:17,25 | 43:1 47:18 |
| 21:17 | 6:1,2,4 9:15 | 21:3,5,8 26:18 | 51:1,4,4,5 54:7 |
| **al** 27:7 | 57:20 60:20 | 28:25 32:11 | 54:12 57:16 |
| **alcohol** 22:2,9 | **answered** | 38:11 | 62:12,16 |
| 40:18,21 | 57:19,21 61:6 | **asking** 5:20,23 | **attorney's** 42:3 |
| **alcoholic** 10:25 | **answers** 4:2 | 21:15 24:12,13 | 54:7 |
| 35:8 | 5:13,16 | 34:21 39:24 | **attorneys** 35:18 |
| **alcoholism** | **anticipating** | 49:19 | 47:4,14,15,20 |
| 12:5 22:6 35:9 | 58:21 | **assessment** | 50:2 62:13 |
| 40:14 41:10 | **anymore** 24:22 | 22:20 36:21 | **authorizations** |
| **allegation** | **appeal** 35:23 | **assets** 12:8 | 60:11 |
| 26:22 29:17 | **appeals** 35:25 | **association** | **available** 62:17 |
| **allegations** | **appear** 35:10 | 39:15 | **avenue** 2:7 |
| 25:23 26:9,19 | 35:11 | **ate** 11:24 | **aware** 9:24 |
| 27:7,19 31:14 | **appearances** | **atlantis** 25:3 | 14:20,23 16:15 |
| 31:18 32:5,8 | 2:1 | 36:6 | 19:24 26:2 |
| 33:9,25 34:3 | **appeared** 57:25 | **attached** 29:10 | 31:3,7 34:20 |
| 34:10,12 37:23 | **appears** 32:12 | 29:16,20,21 | 51:6 55:15 |
| 57:3 | 32:14 35:10 | 30:3,3,6 52:14 | 56:2,4,12,17 |
| **alleged** 25:13 | 37:9 46:4,7 | **attachments** | **b** |
| 31:22 | **april** 11:3 | 60:15 | **b** 29:17 30:3 |
| **allow** 13:10 | **area** 7:15 9:8 | **attempt** 43:4 | **back** 8:12 |
| **allowed** 24:21 | 29:6 | 48:12 50:4 | 10:12 13:2 |
| 24:23 | **areas** 34:18 | **attempted** | 34:19 45:4,15 |
| **allowing** 24:18 | 46:14 | 19:22 30:24 | 46:18 |
| 25:2 | **arkansas** 1:2 | 58:17 | **balanced** 35:11 |
| **american** 8:14 | 2:7,15 4:8 8:20 | **attend** 8:24 | **bankruptcy** |
| 28:9 39:14 | 8:25 9:1,8,10 | **attention** 26:12 | 9:21 |
| 59:10 | 27:23,25 45:5 | 26:13 46:11 | **barn** 24:20 |
| **amount** 40:20 | 45:17 59:5 | **attorney** 5:10 | **basic** 24:8 |
| **angela** 1:6,20 | 62:2 | 5:24 10:4 | **battery** 38:22 |
| 3:3 4:2,16 5:2 | **arrangement** | 15:14 20:11,22 | 38:24,24 39:9 |
| 6:7 38:7 41:18 | 13:24 14:1,4 | 21:8 26:21 | 39:12 |
| 44:21 46:21 | **aside** 56:3 | 27:15 28:18,25 | **becoming** |
| 47:12 60:10 | | 34:22 42:1 | 27:22 40:10,12 |

[began - committee]

began  16:6
beginning
  21:18
behalf  2:3,11
belief  25:14
  29:18 60:9
believe  11:12
  18:2 20:13
  23:8 25:16,18
  28:13 29:3
  32:1,2,20,25
  33:2,15 36:10
  36:16 38:17,18
  39:24 40:2,20
  40:23 41:1
  51:16 54:6,24
  56:21 57:19,19
  57:21 60:5,18
  60:25
believed  32:18
  40:2
believes  37:21
  44:25
best  40:6 57:20
  62:8
bias  58:1
biased  34:12
  35:12
bifurcated
  17:10
big  8:18,18
  44:3
bigger  32:25
biggest  26:8

billing  44:16
bills  42:14
bit  10:15
blank  29:12,18
  29:25 30:9,12
  30:13
blood  8:14
board  27:23
  28:1,9 30:24
  45:5,17 59:5
  59:10
bold  46:10
booth  2:6
born  9:4
break  39:18,23
  59:14
brief  19:1
  39:21 59:18
briefly  10:23
  16:9 18:13
broadway  2:14
  4:8
brothers  8:18

**c**

c  2:6 4:1 15:20
  62:1,1
california  9:4
call  18:6
calling  27:5
cancer  7:13,14
caption  62:6,9
care  58:11
career  35:17
carries  49:5

case  1:10 14:22
  18:4 27:22
  36:7
cats  6:23
cause  4:5 24:2
caused  11:9
causes  23:16
cell  41:23
cellular  60:12
central  1:3
century  7:9
ceo  16:2
certain  19:25
  20:15 41:8
certainly  60:13
certificate  3:5
certified  4:6,7
  62:4,5,16,22,23
certify  62:5,9
  62:11
chance  18:16
change  13:7
character
  43:25 44:12
characterizati...
  31:16
characterolog...
  44:12
charged  38:23
  38:25,25 39:8
check  28:11
  30:25 39:7,16
  43:23 44:1
  45:1 49:7
  59:16 60:23

checking  59:3
cherry  43:16
  46:9 57:1,2
cheryl  15:18
  17:25
child  13:25
  49:6 50:3
choice  36:19
choosing  44:22
chose  33:14,14
  38:18 43:17
  44:9,10 45:23
church  7:18,22
civic  7:4
civil  4:18 62:10
clarifications
  43:5
clarify  27:10
  34:23
clients  53:12
  54:24 55:3
close  7:25
club  7:9
college  8:22,23
  8:24
come  17:12
  45:7
comes  23:19
  49:4
coming  13:2
  50:17
comment  55:13
committee
  35:16,18

**[compiling - dangerous]**

compiling
  30:21
complaint   10:6
  10:9 11:2,23
  58:6,7
complaints
  56:2
complete   35:4
completely
  55:6
compliance
  23:25 27:25
complicated
  5:20
complied   13:5
  59:9
complies   29:5
complying
  42:16,21 59:4
concealing
  41:20
concern   24:5,6
  26:8 33:13
  53:12,15
concerning
  22:18 36:3
concerns   33:7
concluded
  61:19
conclusion   45:8
conclusions
  46:19
conduct   35:16
  35:18 40:15

conducted   21:5
confirm   19:9
  19:10
conflict   22:22
  22:25 23:11,19
  23:24 24:2
  46:7
confuse   5:15
consider   17:3
  21:18
constantly   49:4
consultation
  3:7
contact   27:23
contain   40:11
contained   43:3
contains   39:3
contempt   29:11
  31:21,23
contentious
  12:1
contents   19:10
  22:5
contested   33:24
continue   47:20
  47:23 48:6,7
  48:16
continued   13:1
  16:7 49:1
  50:12
continues
  51:13
contract   62:13
control   12:7
  52:3 56:8

57:13,14,22
58:2 62:15
controlled
  57:17
conveyed   19:5
  19:6
coparenting
  22:22,25 23:10
  23:13 58:18
copies   18:12
  62:15
correct   10:13
  19:12 21:2
  22:9 29:23
  30:18 31:4,9
  35:14 40:1
  43:1 45:22
  48:12 54:22
  56:19 57:7,25
  58:3
corrected   26:24
  28:18,20,21
  34:24 56:25
  57:3,6
corrections
  31:11 35:2
  43:5 48:13
  56:7
cost   7:15
counsel   4:15
county   6:25 7:1
  8:15,19 15:13
  62:3
couple   12:20
  18:12

course   46:22
court   1:1 4:7
  5:13 12:9,22
  13:3,9,12,14
  19:14,21 23:25
  25:14 27:13
  36:9 37:6,19
  44:6,8,23 48:4
  62:4,22
covered   61:5
create   35:21
created   47:1
credentials
  57:12
crime   39:1
criminal   9:23
  33:19,19
cross   8:14
currently   6:14
  6:19 8:7
custodial   14:6
  62:16
custody   13:7
  13:24,25 14:4
  17:8 47:24
  49:6 50:3
customary
  15:12
cv   1:10

**d**

d   15:20
danger   33:1
dangerous
  32:24

**[date - dr]**

| | | | |
|---|---|---|---|
| date  11:11 | deposition  1:17 | discuss  55:23 | 48:24 49:15,25 |
| daughter  6:22 | 4:2,16 10:5 | 57:6 | 50:7,10 51:25 |
| 7:21 8:3 12:5 | 20:3,9,20,23 | discussed  10:3 | 52:17 |
| 13:8 18:2,8 | 26:19 31:3,8 | 48:1 52:16 | doc  47:14 |
| 23:20 24:3,17 | 36:25 43:2,21 | 55:21 59:6 | doctor  50:19 |
| 25:11,17 27:4 | 48:9 56:13,17 | discusses  27:3 | document  19:8 |
| 32:19 33:1,17 | 57:24 62:15 | 56:9 | 21:21 29:8 |
| 34:5 36:5,11 | depositions | discussing  29:7 | 36:19 38:16 |
| 38:7,14 48:1 | 34:15 | 55:11,25 56:11 | 39:3 41:19 |
| 58:22,24 59:2 | describe  11:25 | 56:22 | 46:3,17 51:19 |
| day  4:5 62:19 | determine | dislikes  25:12 | 51:22,23 57:10 |
| days  12:20 | 37:10 | disorder  26:12 | 57:15,18 60:4 |
| 14:11 | devices  24:24 | 26:14 46:11 | 60:6 61:5 |
| dealt  17:7,7 | diagnosis  50:18 | dispute  12:6 | documents |
| decide  10:24 | 50:20 | 34:11 53:18,22 | 10:2,7 19:11 |
| decided  13:18 | dif  53:1 | disputed  31:15 | 26:14 35:20 |
| decree  11:4 | different  52:23 | 32:2 33:8 | 36:9 37:19 |
| 12:10,23 13:16 | 53:1 55:6,6 | 53:21 | 39:5 43:15 |
| 13:17,22 | differently | distributed | 44:23 46:20,23 |
| defendant  1:13 | 53:19 59:7 | 47:25 51:25 | 46:24 47:1,4,7 |
| 2:3 4:4 | diligence  31:5 | distribution | 47:9,11,12 |
| deficit  26:12,13 | dinners  7:17 | 56:3 | 60:18,24 61:1 |
| 46:11 | direct  46:7 62:8 | district  1:1,2 | dogs  6:23 |
| degree  38:23 | disagree  21:11 | divided  14:17 | doing  49:11 |
| 39:9,12 | 21:13,20,22 | division  1:3 | double  59:16 |
| delay  11:17 | 22:5,11,14,17 | 12:7 17:15 | doubt  60:2 |
| delivered  62:16 | 23:2,5 25:21 | divorce  9:19 | dr  5:8 14:18,21 |
| demanded | 25:22 31:21 | 10:12,18,24 | 16:10 19:3,15 |
| 28:20 | disagreed | 11:2,4,25 | 20:1,12,20,22 |
| denied  34:10 | 25:14 31:15,19 | 12:10,23 14:19 | 21:8,10 22:5 |
| 36:6 | disclose  55:1,1 | 15:8 16:5,16 | 22:12 27:9,17 |
| deposed  20:4,7 | disclosed  55:3 | 20:2 23:4,14 | 28:13 30:20 |
| 20:17 | discovery | 24:12,25 25:9 | 32:4 33:10,20 |
| deposing  20:11 | 11:18,19 | 27:12 28:25 | 33:23 34:9 |
| | | 31:13 32:18,21 | 35:4,5 36:7,17 |

37:3,14 38:6
38:13 39:2,3
39:10,25 41:17
43:13 44:19
45:8,18,19
47:22 48:6,8
49:5 50:4,24
51:8,16,21
54:10,17 55:9
55:24 56:8,20
57:5,17 59:7
59:24
**draft**  11:15
**dropping**  58:25
**due**  31:4
**duly**  5:3
**duty**  39:14

**e**

**e**  15:20,20 62:1
62:1,10
**earlier**  5:7 25:2
55:5
**eastern**  1:2
**ed**  6:17 9:19
10:16,24 19:17
41:22
**education**  8:21
**edward**  46:21
**efforts**  23:7
**eight**  11:14
**either**  23:3 30:1
32:5 43:9
47:15
**employed**
62:12

**employee**  62:12
**encompassing**
36:24
**engaged**  53:25
**engagement**
45:6
**engaging**  58:21
**ensure**  27:24
**enter**  11:12
12:19 18:14
**entered**  11:5,13
12:10,19,23
19:21
**entire**  42:6
**entirety**  54:11
**entitled**  45:16
**especially**  44:9
**esquire**  2:6,13
**essentially**  26:9
**estate**  15:16
17:15 52:5,9
53:20 54:3,13
54:14,15,21
**ethical**  34:22
39:15 43:1
45:3 48:8
49:10,11 55:7
58:9 59:10
**ethics**  28:8
**evaluated**  45:9
**eventually**
16:21
**ex**  13:5 14:5
20:14,17 21:7
22:2,6,8,24

23:3,8,11,19
24:3 25:10
26:7,10,21
27:14,20 28:18
29:10 31:14,19
31:20 32:3,5,8
32:17,19 33:8
34:3,21 36:5
40:6,13,18,21
41:6,9 42:12
42:20 45:9
47:20,25 48:15
50:25 51:3,9
51:12,21 57:16
57:16 58:16,23
**examination**
3:4 5:5
**examined**  5:3
**example**  17:6
28:15 31:20
44:13 52:13
**examples**  21:25
22:11,14,17
24:9,15 26:8
42:23
**executive**  21:16
27:2 43:24
**exhibit**  3:7
18:14,20,22
29:17 30:3,3
52:15
**exhibits**  3:6
29:20,21 60:15
**expected**  28:3,5

**experience**
20:25
**expert**  14:18,21
14:25 15:15
17:23 49:6
**explain**  41:14
**expose**  38:14
**exposed**  33:17
34:5 38:7
**exposing**  32:19
**exposure**  27:3
**extent**  41:18
**extreme**  48:22

**f**

**f**  15:20,20 62:1
**face**  37:1,2
**fact**  30:9,25
38:6,13 39:2,7
41:13,17,25
42:6,9 43:23
44:1,20,21,25
45:1 46:1 59:3
60:23
**facts**  28:11
31:16,21 32:3
33:16 37:15,21
39:16 41:14
42:2 49:7 62:6
**factual**  22:19
40:1 41:24,25
**factually**  45:19
**failed**  22:18
44:14
**fair**  22:19
34:13 36:13

**[faith - go]**

faith 58:9
false 33:24
  34:16,17,17
  39:1 56:13,18
far 38:5 39:10
fayetteville
  9:11,12,13
federal 4:17
feel 6:2 58:8
fees 50:2
feet 25:6
fight 50:4
file 10:24 11:22
  12:22 13:9,20
  14:2 41:22
  47:19
filed 9:21 11:1
  12:15 13:7,14
  13:15,15,19
  26:6 27:13,16
  30:4 31:1,2,20
  34:25,25 37:25
  40:25 41:25
  42:1 43:18
  47:15 56:1
  58:6
filing 13:12
filled 30:17
final 16:17,22
  16:24 17:5,23
  31:10 42:7
  48:21 52:13,14
  52:14
finances 15:16
  52:5 54:2,20

54:23
financial 53:15
financially
  62:12
find 25:5 27:23
  28:6 31:1 40:4
  44:3
firm 15:23,24
  53:13,16
first 5:3 17:10
  21:16,23 27:21
  28:2 30:23
  35:1
fixture 36:11
flens 1:13 5:8
  14:18,21 16:10
  19:3,15 20:1
  20:12,20,22
  21:8,10 22:5
  22:12 24:13
  27:9,17 28:13
  29:1 30:20
  32:4 33:10,20
  33:23 34:9
  35:4,5 36:7,17
  37:3,14 38:6
  38:13 39:2,3
  39:10,25 41:17
  43:13 44:19
  45:8,18,19
  47:22 48:6,8
  49:5 50:4,24
  51:8,16,21
  53:23 54:10,17
  55:9,24 56:8

56:20 57:5,17
  59:7,24
florida 34:19
  35:19
focus 23:6
follow 23:22,22
  44:15 49:8,9
  53:9
followed 30:22
  45:16
following 45:5
follows 5:4
foregoing 62:6
  62:7
foremost 27:22
  28:3 30:23
forensic 15:9
  15:10,15 19:17
  52:3 53:3,11
  53:11 54:1
forth 4:9
forty 6:9
four 9:7 11:9
  11:23 21:20
fourth 21:19
  22:21
frame 24:11,13
  40:7 42:12
  53:25
free 6:2
frequent 7:24
front 59:1
frost 16:3
full 6:5 42:19

funding 7:12
further 30:20
  37:5 43:22
  45:14 61:14
  62:9,11

**g**

gate 25:17
gatekeeping
  22:23 23:3,7,9
general 10:7
generate 47:1
  47:14
generated
  46:21 47:4,10
  47:12,13
gesturing 11:24
  16:25 17:8,16
  19:5 36:8,12
  45:1 54:8
girl 24:19
give 5:12 15:15
  44:10 47:6
  58:17
given 22:19
  27:14 28:15
  43:21 50:24
  52:9,11 58:16
  58:18,19 60:14
gives 36:20
giving 42:24
  58:20
go 5:11 6:2
  7:21 18:15,24
  21:17 25:6
  36:5,11 58:10

Page 7
Bushman Reporting      800-556-8974
A Veritext Company     www.veritext.com

**[going - inaccuracies]**

going   13:11
  18:4,11,19
  25:8 27:11,18
  31:9 32:7
  33:14,15 35:15
  36:9 38:1,3
  42:7 44:7 45:4
  45:15 49:6
  51:9 58:25
good   58:9
govern   36:14
graduate   8:21
  9:12
guardian   18:8
guess   13:18
  17:3,4 27:4
guessing   17:13

**h**

h   15:20,20
ha   13:5
hall   2:6
hand   62:19
hang   46:17
happen   35:24
happened
  17:24 26:25
  43:14
happening
  16:16 52:2
happens   5:14
happy   5:21
harass   48:7
  52:1
harm   52:1

harrelson   39:8
  39:11
hate   17:12
head   5:16
  51:15 59:17
health   52:22
hear   24:20
  52:13
heard   12:9 17:2
hearing   11:11
  11:14 12:15,17
  12:19 16:18,24
  17:5,23 26:1
  27:12 31:10
  33:3,4 37:11
  42:8 47:24
  48:4,22 52:14
  52:15 56:16
hearings   17:2
  37:7 50:1,3
heating   42:4
heights   7:22
help   24:9 49:7
  49:8,12
helps   42:10,10
hereinafter   4:9
hereto   62:9,12
hey   31:6 56:16
hicks   2:13,14
  6:10 18:23
  39:20 61:16
high   9:13 22:22
  22:25 23:11
hipaa   52:25

hire   14:24
  15:10,14
hired   14:19,23
  15:3,13,17
  18:6 35:4
history   9:23
  33:19 34:7
  38:8
hold   28:10 34:1
holidays   14:17
home   42:15
  44:15
honest   32:6
hope   7:12,13
horrible   48:18
hospitals   7:15
hotel   25:3,4
huh   9:7 11:16
  15:25 30:18
  34:4 61:10,12
huhs   5:15
husband   11:22
  13:5,13 14:5
  14:19 20:17
  22:8,24,24
  23:3,11,19
  24:3 25:10,17
  26:7,10 27:20
  31:14,19,20
  32:3,17,19
  33:8 34:3,21
  36:5,6,10 40:6
  40:13 41:6,9
  42:12,20 45:9
  47:25 48:15

  50:25 51:3,9
  51:12,17 54:24
  55:24 56:9,22
  57:5,6,16
  58:16,23
husband's
  20:14 21:7
  22:2,6 23:8
  26:21 27:14
  28:18 29:10
  32:5,8 35:6
  40:18,21 47:20
  51:21 52:5
  53:13,16,19
  54:12 57:16

**i**

identification
  18:22
identify   41:12
  41:16 45:13
  46:1
impartiality
  62:14
implied   40:2
implying   37:20
  44:24
important   5:12
  5:17
importantly
  21:19
improved
  23:13
inaccuracies
  43:3

Bushman Reporting
A Veritext Company

**[inaccurate - know]**

inaccurate
  45:19
include  22:18
  26:4 29:24
  32:8 40:15,15
  40:17,24 41:8
  42:3,19 43:7
  43:18,19 44:13
  46:10 48:5
  53:24 54:10,17
  57:1
included  26:17
  33:21 34:11
  35:5,8,9 36:8
  39:6,13 40:3
  40:14,16,23
  41:2,10,21
  54:4 55:22
  57:1 60:6,19
  61:1
including  26:9
  26:11 36:20
  37:17,18 60:10
inclusion  25:22
incomplete
  60:4
incorrect  41:13
  41:15 56:4,18
incredibly  48:2
index  3:1
indicate  23:7
indicating
  16:11 19:21
  21:20 42:22
  50:5

individual
  28:16
individuals
  18:5
information
  20:25 21:1,2,3
  26:2,5,11,16,17
  29:1 30:25
  31:4,7 34:17
  34:21 35:9,13
  40:12,17,20,23
  40:24 41:1,5,9
  41:9 43:7 44:2
  44:20 45:18
  46:11,12 52:4
  52:8,11,12
  53:6,10,16
  54:6,7,8,23,25
  55:2,17,17,21
  56:5,14,18,19
  57:1,23,24
  60:23
initial  58:6,7
instance  34:7
instituted
  10:18
instructs  5:25
  6:3
insufficient
  40:22
integrity  31:5
  35:3 43:25
intend  32:15
intended  55:18

interact  7:25
interest  62:14
interested
  62:12
investigate
  40:4 41:24
investigated
  37:5 45:14
investigator
  15:4,7
involved  7:8,18
  9:18 12:3
  27:22 33:18
  37:8
involvement
  16:5 27:25
involving  25:12
iolta  53:19 55:2
  55:4
issue  13:15,23
  16:10 22:1,4,9
  22:22 28:24
  32:21,25 33:3
  33:4,20 42:6
  50:17
issued  16:23
  50:19
issues  11:10,19
  11:20 12:3,4,8
  12:12 13:1,10
  13:11,14 16:21
  16:23 17:6,7
  17:19 20:19
  21:13,24 22:18
  23:16 24:2

  25:8,11 32:16
  35:23 37:4
  42:10 44:9,12
  45:13 50:3

**j**

james  1:13
january  11:6
jm  1:10
joseph  2:6 5:8
judge  11:11
  19:24 26:25
  27:20 28:21
  37:10
judges  58:17
judicial  36:1
jumped  25:20
june  47:18
junior  7:4

**k**

keep  13:2
keeping  55:4
keeps  50:17
kept  13:11
  25:17
kidd  30:10
kids  6:16
knew  21:1,1
  33:16
know  5:16 6:10
  9:15 10:3,6
  11:17 13:7,8
  15:19 16:20
  18:16 19:20
  20:14,24 21:4

**[know - mean]**

23:8 24:18,25
25:24 26:14,15
26:22 27:4
28:7,11,22,25
31:7,11 32:10
32:12,13 34:25
35:12,13,15,19
35:21,22,22
36:14,22 37:8
37:9,22,23,23
37:25 38:2,5
39:10,15 42:10
42:18 45:4
46:8,12,13,25
47:22 48:3,4,6
48:12,14,15,17
48:18,20,23,24
49:4,5,5,7,17
49:20 50:17
51:2,23,24,24
51:24 52:12,24
52:25,25 53:7
55:8,9,20,24
56:3,16 57:9
60:7,9,10,11,12
60:14,15,17,22
61:6,7
**knowledge**
19:22,23 29:9
34:20 38:12
50:24 51:7
**known** 5:20
51:9,17
**knows** 36:17

**l**

**l** 4:12 15:20,20
**label** 23:10
**lack** 24:5,6,8,10
**language** 36:22
38:18
**large** 50:17
**lastly** 5:24
**law** 2:14 34:25
53:13,16
**laws** 53:8
**lawsuit** 35:1
42:17
**league** 7:4
**learned** 57:23
**leave** 58:10
**leaving** 43:10
**left** 60:7,7
**legal** 35:19
37:9 55:8
**lemay** 42:4,6,9
42:17 43:13
44:14,17
**letter** 26:22
30:10
**letting** 36:5
**libelous** 45:25
**license** 36:2,15
49:10
**licensed** 28:3
**licensee** 28:1
**licenses** 28:10
**life** 9:5 49:21
49:22

**light** 40:6
**liked** 13:16
27:17,21
**limine** 47:19
**list** 59:23 60:2
60:6,19 61:2
**lists** 21:16
**litem** 18:9
**litigate** 46:6
**litigation** 9:19
**little** 2:7,15 4:8
6:20 7:14 8:16
10:15 42:18
**live** 6:19,21
**lodge** 7:12,13
7:13
**long** 11:7,17
25:7
**look** 25:4,5
40:9 59:20
60:18
**looked** 19:12
60:21
**looking** 25:19
**lot** 11:18,19
12:4 17:1
23:15,22 25:22
32:16 40:24
41:10 43:3
60:8

**m**

**made** 6:1 10:23
26:10,19,23
27:8,19,19
31:3,11,18

32:3 34:3
35:25 37:24
40:9 42:5,5
44:3 56:12,17
62:17
**main** 12:3
20:19
**maintenance**
42:13,14 44:15
**major** 23:18
**make** 31:10,13
35:1,10 43:5
48:12 49:18,22
56:7 57:5,9
61:8
**making** 5:14
43:24,25 44:20
**managing** 16:2
**march** 1:25 4:5
48:5 62:19
**marital** 15:16
17:15 42:15
52:5,9 53:20
54:3,9,13,14,15
54:21 55:4
**mark** 18:19
**marked** 18:22
**market** 2:7
**marriage** 10:16
**married** 6:14
10:16
**matter** 5:9
12:16
**mean** 8:2 10:6
11:19 17:4

**[mean - old]**

24:7,10 25:4,7
26:15 30:11
32:23 36:21
37:7,13 40:9
44:23 45:1
46:3,5,8 48:11
48:18,23 53:7
58:14 60:13,21
60:21
**medical** 50:18
**medication**
  26:13 50:21
**member** 7:3,9
  7:24 8:4
**members** 8:1
**mental** 52:22
**mention** 26:12
**mentioned**
  16:20 30:2,23
  34:14 48:15
**messages** 21:5
**met** 5:7
**method** 62:7
**methodist** 7:22
**mike** 4:5 62:4
  62:22
**mile** 25:7
**military** 9:16
**million** 54:15
**mine** 20:13,15
**mirelez** 4:6
  62:4,22
**mischaracteri...**
  42:9

**missed** 61:8
**mistakes** 35:23
  35:24
**misunderstood**
  22:13
**moment** 18:7
  34:14
**monday** 14:14
**money** 49:24
  49:25 53:18
  55:3
**months** 11:14
  11:23 48:21
**moody** 1:6,20
  3:3 4:3,16 5:2
  6:7,8 38:7
  39:23 41:18
  44:14,21 46:21
  46:21 47:12
**moody's** 60:10
**morning** 14:15
**motion** 29:10
  31:21,23 47:19
**motions** 13:7,9
  13:15,19,21
  14:2 17:1
**move** 46:15
**multiple** 12:11
  13:19,20 47:25

**n**

**n** 4:1,12
**name** 6:5 39:14
**name's** 5:7
**narrowed** 17:5

**need** 31:6,6
  56:19
**needed** 11:15
  15:14 27:24
  28:2 34:23
**neither** 19:17
  29:20
**never** 17:2,2
  32:10,11 33:5
  38:25,25 39:8
  39:10 47:22
**new** 13:14
**night** 14:15
**nights** 14:13,14
**nine** 6:9
**nods** 5:16
  51:15 59:17
**northwest** 8:20
  9:8,10
**notary** 62:5
**notes** 10:2
  60:12
**notice** 43:2
**notified** 26:20
  34:14 48:9
**november**
  12:17,18 48:2
**number** 29:8
**numbered** 4:4
**numerous**
  46:13,13,20
  47:11 58:8

**o**

**o** 4:1,12
**object** 5:24
**objection** 6:1
  18:21,23
**obligation** 45:3
**october** 16:13
  20:8 48:10
**office** 2:14 59:1
**oh** 17:9 22:3
  31:17 44:14
  46:18
**okay** 6:16,19
  7:3,7,16 8:6,11
  8:13 9:3,5,10
  9:15,18,21,23
  10:1,8,11,23
  11:21 12:3,9
  12:14,25 13:11
  13:22 14:8,10
  14:16 15:3,6
  16:4,9,20
  17:14,18 18:1
  18:11,18 19:14
  19:17 20:1,4,6
  20:11,19 21:10
  22:16,21 23:10
  23:18 24:9
  25:10,19 29:15
  29:19 30:8,19
  41:19 43:9
  46:15 47:17
  51:6 59:22
**old** 6:8

**[omitted - portions]**

**omitted**  60:22
  60:22
**once**  27:10
  56:12
**ones**  21:21
**ongoing**  12:12
**opinion**  15:15
  38:17 54:2
**opinions**  21:10
  43:25
**opportunities**
  58:8
**oral**  4:2,16
**order**  11:13,15
  12:19 13:9
  42:13,13 46:8
**orders**  23:21,25
  27:20 42:15,21
  43:19 44:15
**organization**
  7:3,11,23
  15:22
**organizations**
  7:4,7 8:3
**original**  62:15
**ought**  49:8
**outcome**  62:13
**overnight**
  24:19
**overscheduled**
  25:15
**own**  6:24

**p**

**p**  4:1,12
**p.c.**  2:6
**p.m.**  1:25 4:8
  61:19
**page**  3:2 29:3,4
  30:2 41:19
**pages**  59:21
**paid**  38:3
**paragraph**
  41:20
**paramour**  27:5
  38:7,8
**parent**  14:7
  25:11
**parenting**
  23:20 24:4
**part**  17:11 23:8
  27:2 53:20
  54:2,14,15,20
**parties**  4:15
  44:16 52:6,10
  55:12 56:23
  62:12,13,17
**partner**  16:2
  32:18 34:6,6
  38:14
**party**  26:18,19
  26:20 28:16,19
  36:17 55:21
  56:10
**party's**  30:10
**patients**  7:14
  7:17

**pay**  42:13,14
**paying**  44:15
**pays**  36:3
**people**  7:25
  28:9 47:25
  48:3 49:8
  51:10 52:17
  55:25 57:7
**period**  11:7,9
**person**  14:22
  15:6 27:6
  32:20,23 33:1
  33:18 38:2,20
  44:4
**persons**  62:13
**ph.d.**  1:13
**phone**  2:8,15
  41:23 60:12
**physical**  38:22
  38:24
**picked**  25:24
  26:1 36:21
  43:16 57:1,2
**picking**  46:9
**place**  51:21
  62:8
**plaintiff**  1:6
  2:11 37:25
**plaintiff's**
  61:18
**planning**  45:7
**ple**  43:18
**pleading**  26:20
  26:24 27:1
  28:17,19,20,22

**30:4 31:14
  32:9 36:22
  41:25 55:22
pleadings**
  25:25 28:6
  32:13 35:24
  37:24 40:5,7,8
  40:16,17,21,25
  41:2 42:11,25
  43:18 47:14,15
  47:16 53:23,24
  54:5 55:19
  56:1
**please**  5:18 6:5
  34:2
**pled**  53:22
**plumbing**  42:4
  42:10 43:13
**point**  14:10,25
  15:4,8,25 16:9
  19:20 20:1
  25:16 30:1
  31:13 41:16
  44:18,19
**pointed**  21:24
  23:6
**police**  29:9,13
  29:25 30:5,11
  30:14,15 41:21
  43:12
**poor**  35:20
**portion**  31:24
**portions**  25:24
  54:13,19

**[possession - r]**

possession  53:5
possible  41:4,5
possibly  17:3
　19:7 20:14
postdecree
　16:8 24:14
　25:1 50:1,2
postdivorce
　13:1 49:15
　50:13
power  57:9
practice  15:21
preference  28:8
preferred  27:9
prenuptial  12:6
　17:9
prepare  10:2
　19:4 32:7
prepared  53:11
preparing
　16:17 59:24
prescribed
　50:21
prescription
　60:11
present  20:9
　40:5
pressure  48:22
　49:1,2
pretty  12:21
　15:12 44:3
prevent  52:8
　53:3 55:11
prevented
　56:21

previously  29:7
prim  14:6
primary  14:6
printed  18:12
prior  9:19 10:2
　10:5 16:22
　50:7
privacy  52:25
private  15:3,7
　26:15 54:8,25
　55:2
privy  43:8
probably  48:25
　59:12 61:3
problem  58:5
problems  48:10
procedure  4:18
　62:10
proceeding
　12:1
proceedings
　10:18 14:19
　15:1,8 16:10
　18:9 32:22
　37:9 49:15
　50:10 52:18
　62:6,7
process  36:1
produced  4:3
　57:15
professional
　4:6 28:4,8,10
　31:5 35:3,16
　35:18 49:10
　53:1 55:7 56:6

56:14 57:11
　62:5,23
professionals
　52:23
promotes  49:5
pronounced
　53:19
proof  26:21
property  13:4,6
　13:8 14:2 17:7
protected  53:7
proven  26:2
provide  20:2
　43:8 46:23
　58:22 62:16
provided  21:3
　26:21 27:12
　30:25 42:1
　44:2
provides  7:11
providing
　55:17
provisional
　28:1
psychologist
　19:18 45:10
　48:17
psychologists
　52:24 53:8
　55:5
psychology
　27:23 28:9
　30:23 39:15
　45:6,17 59:10

public  55:23
　62:5
pulaski  7:1,21
　8:15,19 15:13
　62:3
purports  19:11
purpose  45:12
purposes  4:17
　51:24 55:18
pursuant  4:9
put  24:17 31:8
　32:7 33:15
　36:2,3 38:3
　42:18 43:2,17
　45:24 48:22,25
　49:1 51:18
　54:8,12
putting  37:20
　45:23

**q**

question  5:19
　6:3,4 34:2 51:3
　60:20 61:13
questions  5:13
　5:20,25 61:15
　61:16
quick  18:11,13
　59:14,20
quite  40:6
quote  39:4
quotes  54:8

**r**

r  1:13 15:20
　62:1

Bushman Reporting
A Veritext Company
800-556-8974
www.veritext.com

**[raised - required]**

| | | | |
|---|---|---|---|
| **raised** 9:5 | **recommendat...** | **relatives** 6:25 | 41:22 43:3,5 |
| 32:21 33:7 | 19:15 21:12 | 7:1 | 43:12,14,17 |
| **rather** 11:7 | 46:19 | **relied** 28:17 | 44:19,22,25 |
| **read** 37:21 | **record** 5:14,15 | 43:21 44:7,8 | 45:8,11,12,24 |
| 43:20 | 6:2,6 18:15,25 | 60:16 | 46:2,16,25 |
| **reader** 36:20 | 19:21 44:6,8 | **relinquish** | 47:17,20 48:11 |
| 38:17,18 | 55:23 | 62:15 | 48:21,23 49:13 |
| **reading** 27:15 | **records** 19:4,7 | **rely** 36:9 | 49:21,22 50:15 |
| **real** 18:11,13 | 19:12 27:10,11 | **relying** 35:19 | 50:19,22,23,25 |
| 59:20 | 27:13,15,18 | 44:23 | 51:10,13,14 |
| **realized** 58:4 | **recused** 11:11 | **remained** 16:7 | 53:11 54:10,18 |
| **really** 5:12,17 | **red** 8:14 | **remember** 5:18 | 55:11,25 56:9 |
| 7:24 23:5 | **referenced** | 10:8 11:1,4 | 56:12,15,20,22 |
| 32:14 60:20 | 30:10 | 12:14 15:17,21 | 56:25 57:4,6 |
| **realm** 57:14 | **referring** 47:13 | 16:4 20:6,16 | 58:11,12,16,24 |
| **realtime** 4:7 | **regarding** 14:2 | 21:7 | 59:4,8,20,25 |
| 62:5,23 | 22:1,21 24:3 | **rephrase** 5:21 | **reported** 62:7 |
| **reason** 6:4 51:8 | 29:17 41:25 | 22:7 | **reporter** 3:5 |
| 60:2,5,17,25 | 43:11 52:4 | **reply** 31:2 | 4:6,7,7 5:13 |
| **recall** 9:20 | 53:8,16 59:8 | **report** 3:7 | 62:4,5,5,22,23 |
| 17:20 18:7 | 60:12 | 16:10,23 18:12 | 62:23 |
| 20:18,19 29:16 | **registered** 4:6 | 18:17 19:4,20 | **reports** 29:25 |
| 52:19 | 62:5,23 | 22:6,12 24:13 | 30:2 52:17 |
| **receive** 7:14 | **regretted** 6:12 | 25:20 26:12 | 53:4 56:5 |
| 29:24 50:9,12 | **regulations** | 29:4,6,9,13 | **represent** 5:8 |
| **received** 24:21 | 28:1 59:5 | 30:2,5,11,14,15 | **represented** |
| 26:14 28:5,19 | **related** 13:20 | 30:21 31:8,24 | 18:8 |
| 50:18,20 | 17:15 40:18 | 32:7,12,14 | **request** 4:3 |
| **receiving** 50:6 | 54:23 55:2 | 33:15,21 34:12 | 46:24 |
| **recently** 24:18 | **relates** 21:24 | 34:16,18 35:5 | **requested** |
| **recess** 19:1 | **relationship** | 35:7,21 36:4,8 | 62:11 |
| 39:21 59:18 | 7:25 22:25 | 36:16,23 37:4 | **require** 28:9 |
| **recollection** | 23:11 | 37:17 38:6,13 | 39:16 |
| 33:5 | **relative** 62:11 | 39:13 40:3,11 | **required** 13:2 |
| | | 41:3,7,12,17,21 | 42:12,25 53:8 |

Bushman Reporting
A Veritext Company

**[requirement - shame]**

requirement
    45:2
requirements
    39:16 49:9,10
    49:11 52:24
    53:2 55:7,7,8
    55:16
requires  62:15
    62:16
requiring
    42:14
reserve  61:16
reside  7:1
resolved  16:22
    17:19
resolves  23:24
respective  4:15
responded
    47:16
response  11:22
    31:1 32:9,11
    32:15 42:1,3
    43:18
responses  26:5
    38:1 57:2
responsive
    25:18
restrictions
    51:19,20
result  44:16
resulted  42:17
retain  14:25
retained  15:7
    17:22

retractions
    35:2
review  18:13
    18:15,17 34:15
    43:19 44:2
    54:1 60:6 61:1
    62:10
reviewed  10:1
    10:4 19:3
    27:10 39:5
    40:8 43:15
    46:20 47:5,11
    59:24
reviewing  44:5
revolves  10:11
    23:25
rickey  2:13
right  17:21
    30:19 39:23
    43:4 52:20
river  2:7 25:3
    36:5
roaring  25:3
rock  2:7,15 4:8
    6:20 7:14 8:16
romantic  32:17
    34:6,6 38:14
romantically
    33:18
root  45:4,15
rule  62:10
ruled  25:13
rules  4:17
    30:24 36:14
    45:6,17 52:24

55:16 59:5,10
    62:10
ruling  17:12
    24:20,21 26:3
    33:6
rulings  28:7
    35:24,25 37:24
    38:1
russell  42:4,17
    43:12 44:14,17

**s**

s  4:12,12 15:20
safety  12:5
    13:4 24:5,6,8
saw  14:10
    19:17
saying  36:24
    37:16,18,21
    39:5,25 40:23
    44:11,23 46:4
    56:11
says  19:8,12
    37:4 38:6,13
    38:23 41:17
    44:19 45:11
    46:19 47:10
scheduled  17:2
    17:5
school  9:13
scratch  38:4
seal  62:19
sealed  26:25
    27:1 28:22
second  21:17
    21:23 29:10

31:20,23 46:17
see  13:25,25
    24:20
seeing  27:18
seem  58:11
seen  30:1
select  36:22
selective  43:16
sent  18:3 26:21
separate  10:21
september
    16:12
serve  7:17
served  9:16
    35:17
serves  35:16
service  7:12
    62:17
services  8:14
session  48:2
    58:20,22
set  4:9 52:23
    53:1 55:6,6
    62:9
settle  48:23,23
settled  13:17
    16:21,24 48:24
settlement  13:4
    13:6 14:2
seven  49:3
several  34:18
    46:22
shakes  5:16
shame  48:16

**[share - talks]**

**share** 6:17 51:9 51:13 52:4
**shared** 51:13
**sharing** 52:8
**shocked** 48:11
**show** 42:12 44:18 60:16
**showing** 42:15
**shown** 27:6
**shuffield** 15:18 17:25 18:1
**side** 21:4 32:15 33:11,11,14 35:6 36:8 43:6 44:3 60:8
**signature** 57:10
**signed** 39:13
**similar** 25:8
**simply** 37:4
**sisters** 8:18
**situation** 23:13 24:4 33:12 42:8,22
**situations** 24:17,18,23 25:1
**sleep** 24:19
**small** 25:24 42:5
**smith** 2:6
**somewhat** 10:14 35:10
**sorry** 12:18 22:3,13 57:21

**sort** 6:4 10:11 16:16 51:20
**sources** 23:18
**speaking** 24:11 31:25 44:5 53:4
**specific** 10:8 23:21 25:20 27:7
**specifically** 13:22 49:19
**spell** 15:19
**spend** 49:24,25 50:1
**spoken** 32:10
**ss** 62:3
**staff** 25:4
**standard** 14:13
**standards** 52:23
**started** 58:24
**state** 6:5 30:23 46:18 49:9 51:23 59:5 62:2
**stated** 39:6 41:20 62:6
**statement** 44:21
**statements** 39:25,25 41:12 41:14 44:4 46:1
**states** 1:1 38:19

**stayed** 23:14,15 23:16
**steady** 12:21
**stenographic** 62:7
**step** 11:13
**stepina** 2:6 3:4 5:6,8 6:12,13 18:19,24 19:2 39:19,22 59:14 59:19 61:14
**stipulated** 4:14
**stolen** 41:23
**stop** 56:6 59:13
**stories** 21:4
**story** 42:20
**styled** 4:4
**submitted** 56:25
**subpoena** 18:4
**substance** 29:22
**substantial** 50:2 62:14
**sued** 44:16
**suing** 45:18
**suite** 2:7
**summaries** 60:8
**summarizatio...** 60:8
**summarize** 43:14 44:10
**summary** 21:16 27:3 42:5,19

43:24
**summer** 16:6
**super** 24:8
**supervision** 24:8,10 62:8
**support** 13:25 44:11
**suppose** 21:13 27:11
**supposed** 23:22 36:13
**sure** 5:9,22 18:5 19:7 31:10 49:18,23 57:9 60:4 61:8
**surprised** 48:11
**sworn** 5:3
**system** 36:1 37:6

**t**

**t** 4:1,12,12 62:1 62:1
**take** 8:12 33:14 38:1 39:18 50:21 59:14
**taken** 1:25 4:4 4:16 13:23 19:1 39:21 59:18 62:8
**talking** 29:3 55:9 56:11 58:24
**talks** 48:3

Bushman Reporting
A Veritext Company

**[tell - university]**

**tell**  10:15,23
   16:9 33:10
**template**  30:15
**temporary**
   11:11 46:7
**tendency**  62:14
**terming**  22:21
**terms**  13:17,19
**testified**  5:4
**testify**  17:23
   45:7
**testifying**  31:10
**testimony**  20:2
   61:18
**testing**  13:10
**text**  21:5
**therapist**  18:3
   18:4 58:19,21
   58:23
**therapy**  48:2
   49:24 50:6,9
   50:12,15 58:20
   58:22
**thing**  32:6
   34:22 36:6
   43:4 48:9 56:6
   56:14
**things**  12:22
   13:12 25:20,23
   26:4,6 29:20
   43:11,13 46:4
   48:18 60:23
**think**  9:15
   11:23 14:1,10
   16:1,1,2 17:11

   17:20 18:3,3
   20:13,25 22:13
   26:15 30:20,22
   30:24 32:6
   33:20 35:5,20
   36:7 38:11
   49:21 51:8,18
   51:20 55:22
   58:14 59:7,9
   59:15 61:6
**third**  21:17,23
   22:1 26:17,19
   26:20 28:16,19
   30:10 36:17
   38:23 39:9,12
   52:5,10 55:11
   55:21 56:10,22
**thoroughly**
   43:19 44:2,5
**thought**  33:7
   44:11 45:13
   46:10
**three**  21:12,14
   21:14,15
**thursday**  14:13
   14:14
**time**  8:9 10:21
   11:9,24 12:14
   16:17,22 22:25
   24:11,12 32:18
   40:7 42:11
   53:25 62:8
**title**  16:1,2
**today**  10:2,5
   58:14,14 61:4

   61:7,7
**todd**  5:9
**told**  43:12
   58:12
**took**  11:10,13
   26:13 36:25
   37:16,18
**tool**  48:16
**town**  7:5
**transcribed**
   62:8
**transcript**
   11:14 62:10,15
   62:15
**travel**  7:14
   13:25
**treatments**
   7:15
**trial**  17:11 18:5
   61:17
**tried**  47:23
**true**  26:3,23
   27:7 33:24
   34:9 37:22
   57:25 62:6
**truthful**  28:12
   28:21,24 33:9
   33:12 34:13
   36:13
**truthfulness**
   32:4
**try**  5:21 48:16
**trying**  35:10,11
   37:8 46:5,6
   49:7 57:11

   61:8
**tuesday**  14:15
**turn**  29:4
**twenty**  49:3
**two**  6:23,23
   13:7 14:11
   58:17
**type**  25:25
   35:21

---
u
---

**u**  4:12 15:20
**uh**  5:15,15 9:7
   11:16 15:25
   30:18 34:4
   61:10,12
**uhs**  5:15
**un**  47:21
**unbiased**  28:11
**unclarified**
   47:21
**uncorrected**
   47:21
**under**  62:8
**underpayment**
   41:21
**understand**
   5:19 24:10
   30:19
**understanding**
   29:19 33:5
   45:25 52:7
   59:23
**united**  1:1 7:22
**university**  8:25

Bushman Reporting
A Veritext Company
800-556-8974
www.veritext.com

**[unmodified - years]**

**unmodified**
47:21
**unmonitored**
24:24
**unproven**
26:10
**unsafe**  24:17
**unsupervised**
25:2
**untruthful**
28:14
**upset**  48:1
**upsetting**  48:14
49:16
**use**  24:24 40:18
47:20,23,23
48:7 50:4
51:19,21 57:17
62:7
**used**  22:12,14
27:5 42:5
48:15,20,20
49:14 52:12
**using**  48:19
**utilize**  36:2
57:11
**utilizing**  57:11

**v**

**v**  1:8
**valid**  33:8
**value**  37:1,2
**various**  11:10
11:20 12:8
13:10 25:1
27:15,19,20

42:24
**verbal**  5:12,16
**verbatim**  62:7
**verified**  21:2
29:1 32:4
33:22,23 34:9
**verify**  29:23
32:15
**view**  14:21
**views**  21:21
29:8 36:19
38:16 41:19
46:3,17 60:4
**violence**  34:8
**violent**  27:5
28:16 33:19
34:7 36:18
38:8,15,19,19
**visitation**  13:6
14:9,12

**w**

**wait**  51:2
**waiting**  11:18
**want**  5:11,18
5:21 10:3
31:10 49:17,18
49:20,22
**wanted**  38:16
38:17 48:5
**wants**  58:10,10
**water**  25:6
36:11
**way**  25:11
28:23 33:23
35:11,20 43:10

49:14,21 52:1
58:12 61:11
**weapon**  48:20
**week**  14:11,15
**weekends**
14:13
**went**  34:19
**whatsoever**
26:1
**willing**  35:1
**withdraw**  43:4
58:3
**withdrawing**
59:4
**withdrawn**
56:15,20 57:8
57:12
**withdrew**
47:22
**witness**  3:2 4:3
39:18 59:17
62:19
**witnesses**  42:7
**woman**  6:10
**women's**  7:11
**wooten**  5:9
**word**  27:4
**words**  37:1
**work**  8:7,7,17
16:7 21:6
55:18
**worked**  8:9
**worry**  8:5
**writing**  37:20
43:20 44:25

**written**  45:24
**wrong**  54:18
**wrote**  44:22

**y**

**y**  15:20
**yeah**  6:12
29:14 39:20
51:6
**year**  11:9 49:3
49:4
**years**  46:22

Federal Rules of Civil Procedure

Rule 30


(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the
deponent or a party before the deposition is
completed, the deponent must be allowed 30 days
after being notified by the officer that the
transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to
sign a statement listing the changes and the
reasons for making them.

(2) Changes Indicated in the Officer's Certificate.
The officer must note in the certificate prescribed
by Rule 30(f)(1) whether a review was requested
and, if so, must attach any changes the deponent
makes during the 30-day period.



DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES
ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY.
THE ABOVE RULES ARE CURRENT AS OF APRIL 1,
2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES
OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

## VERITEXT LEGAL SOLUTIONS
### COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.